310 So.2d 648 (1975)
Parker BRYANT
v.
Nancy Cochran BRYANT.
No. 10179.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
David L. Dawson, Jr., Baton Rouge, for appellant.
Kenneth L. Riche, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
YELVERTON, Judge.
Nancy Cochran Bryant obtained a judgment of separation from her husband on the grounds of habitual intemperance and cruelty on March 9, 1973.
On May 29, 1974, Mr. Bryant sued for final divorce on the ground that there had been no reconciliation for a year and sixty days, authorized by LSA-R.S. 9:302. Mrs. Bryant answered and reconvened for a final divorce and permanent alimony in the amount of $225 per month.
The trial court rendered judgment on August 5, 1974, granting Mr. Bryant a final divorce and ordering him to pay alimony in the amount of $125 per month.
It is from this judgment that the present appeal has been taken by Mr. Bryant. He urges two errors: (1) there was no finding of fault, and (2) the wife is not entitled to alimony because the evidence shows she has sufficient means for her support.
Three recent decisions of the Supreme Court of Louisiana are applicable to a resolution of the first assignment of error. Fulmer v. Fulmer, 301 So.2d 622 (La.1974), Frederick v. Frederick, 302 So. 2d 903 (La.1974), and Nethkin v. Nethkin, 307 So.2d 563 (La.1975), hold that determination of marital fault in the separation proceedings bars relitigation of the fault issue for purposes of an award of alimony following the final divorce on the ground *649 of no reconciliation. Here Mrs. Bryant obtained the judicial separation on the ground of her husband's fault. This amounted to a judicial determination of Mr. Bryant's pre-separation fault as the sole legal cause of the separation. In the subsequent suit for divorce grounded on the statutory ground, La.R.S. 9:302, of the spouses' non-reconciliation for a specified period after the judgment of separation, the trial judge properly denied Mr. Bryant the right to relitigate the question of fault.
We turn now to a consideration of the second issue presented by this appeal and that is whether the trial court's allowance of $125 per month alimony was proper on the facts of this case. Mr. Bryant contends that she has sufficient means for her support and that she is not entitled to any alimony.
The Frederick case, supra, is instructive as to this issue also. Said the court:
"After divorce the husband's obligation to support the wife no longer exists, and the court has discretion to allow alimony out of the property and earnings of the husband in a sum not exceeding one-third of his income only if the wife is without sufficient means for her support. Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950). Alimony awarded upon the authority of Article 160 is a gratuity in the nature of a pension. Hays v. Hays, 240 La. 708, 124 So.2d 917 (1961); Brown v. Harris, 225 La. 320, 72 So.2d 746 (1954).
"As used in Article 160 reference to `means for her maintenance' refers primarily to food, shelter and clothing. Rabun v. Rabun, 232 La. 1004, 95 So.2d 635 (1957); Stabler v. Stabler, 226 La. 70, 75 So.2d 12 (1954).
"The test is not whether the wife has the means to support herself in the manner to which she is accustomed to live, but what will provide her with sufficient means for her maintenance, Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959), the wife having the burden of establishing her necessitous circumstances, Malone v. Malone, 260 La. 759, 257 So.2d 397 (1970). The amount necessary for maintenance of a divorced wife is to be determined by the circumstances of each particular case. Brown v. Harris, 225 La. 320, 72 So.2d 746 (1954); Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953).
"And in determining means for the wife's maintenance, her income is not the sole consideration. All of her means must be regarded to determine their sufficiency for her maintenance...."
The word "maintenance" has been described by the court in Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973) as follows:
"... Common sense dictates that the term `maintenance', while meaning primarily food, clothing and shelter, does include such items as reasonable and necessary transportation or automobile expenses, medical and drug expenses, utilities, household expenses, and the income tax liability generated by the alimony payments made to the former wife...."
Mrs. Bryant lives in the family home on which there is still an outstanding mortgage balance. During the tax year prior to the divorce her net income was reported to be $2,673.50. This income was from a part-time job at Sherwood Nursing Home. Her income, therefore, amounted to a bare net of $222 per month. She itemized her expenses for the benefit of the trial court to be $408 per month.
For the year 1973 the income of Mr. Bryant came to a net monthly amount of $861.39.
The trial judge recognized that in determining means for the wife's maintenance, her income is not the sole consideration. He took into account also her interest in the community property. The community estate in this case has a total value of approximately *650 $47,000. Of this amount, some $20,000 is tied up in thrift funds (in the form of stock) and annuity funds in Exxon Corporation, Mr. Bryant's employer, and it was found as a fact by the trial judge that this $20,000 portion of the community cannot be touched by either party until Mr. Bryant reaches retirement age (he was 55 at the time of trial). The record supports this conclusion of fact. Hence, we cannot consider the wife's share of this $20,000 portion of the community as presently available for her maintenance.
Of the $27,000 balance of the community estate $15,000 represents the equity in the family home where Mrs. Bryant is presently residing. The remaining community estate, approximately $12,000 worth, consists of some rent property (which produces $150 per month income retained by Mr. Bryant), and a savings account of $1771.[1]
To complete the financial picture, Mrs. Bryant owns 16½ acres of unimproved land in Mississippi. The only suggestion in the record as to its value is that eight adjacent acres recently sold for $100 an acre. The trial judge found, and we agree, that there is an insufficient basis in the record for evaluating this property in terms of its availability for her maintenance.
Even so, if we assign the Mississippi property an arbitrary value of $1650, and add to that the value of Mrs. Bryant's one-half interest in the community estate over which the parties have control, we can say that she has property worth a little over $15,000. Does the bare ownership of that much property in the circumstances of this case compel or justify denial of alimony?
In the Frederick case, supra, it was held that $20,700 in cash and a community interest valued at over $73,000 was sufficient means for the maintenance of the wife and alimony was denied. Frederick compared itself with another case, Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950), where, in less inflationary times, possession by the wife of $20,000 worth of property without any liquid assets, was considered sufficient means to deny alimony.
Smith was decided in 1950; Frederick, in 1974. In comparing the two fact situations, Frederick recognized the necessity for "making allowances for the differences in money values". Another difference between the facts, noted the court, was that Frederick involved $20,700 in liquid assets while in Smith the wife possessed $20,000 worth of property only, no liquid assets. This made Frederick the stronger case for denying alimony.
If the nature of the property, such as its liquidity, is relevant to a determination of its availability to the wife's maintenance, then it is significant that between the Smith case and our present facts there are other notable differences. In Smith, the $20,000 worth of assets consisted largely of U.S. Government war bonds and notes due the wife by the husband, which are not so distant from being liquid assets, whereas in the facts of the case before us, the conversion of the property into liquid assets would require the sale of the family home, and the resulting additional expense for the wife to pay for a place to live, and also the sale of the rental property which would reduce the husband's income by $150 a month.
*651 The most significant difference, of course, between the Smith case and the instant facts is the difference in money values in the quarter century that separates the two cases.
We conclude, as did the trial judge, that Mrs. Bryant has not sufficient means for her maintenance, and that the sum of $125 a month alimony accords with the needs of the wife and the other facts and circumstances of this case.
For these reasons, the judgment of the trial court is affirmed, at the cost of plaintiff-appellant.
Affirmed.
NOTES
[1] In her tax return for 1973 Mrs. Bryant reported interest income of $112 for that year from savings accounts. She was questioned about this at the trial and while the record is not entirely clear in this regard, it would appear that neither the interest nor the principal in these accounts actually belonged to her. One account, established years ago, belonged to her daughter, and the interest was allowed to accumulate, but she reported it because she felt she was required to as the name of the account included her name. The other account was the $1771 savings account to which this footnote appends. Counsel for the husband was apparently satisfied with Mrs. Bryant's explanation of this item, because he did not pursue it further. Also, the trial judge did not mention interest income in his opinion.