358 So.2d 304 (1978)
Neila LeBlanc, wife of Eugene James LOYACANO
v.
Eugene James LOYACANO.
No. 59688.
Supreme Court of Louisiana.
January 30, 1978.
Dissenting Opinion February 22, 1978.
On Rehearing April 10, 1978.
*306 A. D. Freeman, Satterlee, Mestayer & Freeman, New Orleans, for applicant-plaintiff.
Charlotte A. Hayes, New Orleans, for applicant-plaintiff on rehearing.
Jacob J. Meyer, Coleman, Dutrey, Thomson, Meyer & Jurisich, Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, for defendant-respondent.
DENNIS, Justice.
The questions presented for decision in this case are: whether Louisiana Civil Code Article 160, which allows a court to grant a divorced wife alimony, denies equal protection of the law in contravention of the federal and state constitutions; and whether the court of appeal properly revoked an alimony award as having become unnecessary. We answer both inquiries in the negative, reverse the court of appeal decision, and reinstate the district court judgment.
In 1971 Mrs. Neila LeBlanc Loyacano was granted a divorce from her husband, Dr. Eugene Loyacano, on the grounds of living separate and apart for two years pursuant to Louisiana Revised Statute 9:301. The default divorce judgment provided Mrs. Loyacano with $1,000 per month alimony and $1,000 per month for the support of their two minor children. Dr. Loyacano voluntarily supplemented these payments with extra sums which were discontinued upon his remarriage in February of 1974.
Mrs. Loyacano filed a rule to increase both the alimony and child support awards in May of 1974. Following an involved procedural history,[1] during which Dr. Loyacano filed rules to reduce the child support award and reduce or revoke the alimony, hearings were held on the respective rules in October of 1975. Child support was awarded in the amount of $500 per month per child and the alimony was reduced to $300 per month. Both parties appealed to the court of appeal. The child support award was affirmed but the $300 per month alimony award was revoked. Loyacano v. Loyacano, 343 So.2d 365 (La.App. 4th Cir. 1977). We granted Mrs. Loyacano's application for certiorari to review the judgment revoking alimony.[2] 345 So.2d 57 (La.1977).

I.
Alimony after divorce is governed by Article 160 of the Civil Code which authorizes a court, under proper circumstances, to allow the wife alimony out of the property and earnings of the husband.[3] There is no provision of positive law which expressly authorizes a court to grant alimony after divorce to the husband.[4] Defendant-respondent *307 contends that Article 160, therefore, is an unconstitutional denial of equal protection of law prohibited by both the Fourteenth Amendment to the United States Constitution and Article I, § 3 of the Louisiana Constitution of 1974.
The argument based on federal constitutional grounds may have merit.[5] We do not consider it here, however, for we agree that to allow only wives to collect alimony after divorce would amount at least to arbitrary and unreasonable discrimination against persons because of sex and thus a denial of equal protection under the Louisiana Constitution.[6] Although not based solely on sex, such classifications for purposes of entitlement to alimony after divorce probably were founded on the assumption that all former husbands have sufficient means for their support, or that few divorced women have property and earnings out of which alimony could be paid, or upon both. If these propositions were ever true, common experience tells us that the deviations from them are now too numerous for the classifications to withstand equal protection challenge.[7]
The failure of the legislature to expressly authorize the allowance of alimony after divorce for male citizens, however, does not necessarily invalidate Civil Code article 160. Because Louisiana is a civil law jurisdiction, the absence of express law does not imply a lack of authority for courts to provide relief. In all civil matters, where positive law is silent, the judge is bound by the Civil Code to proceed and decide according to equity,[8] i. e., according to natural law and reason, or to received usages. La.C.C. art. 21. This Court has recognized its duty *308 to proceed and decide important issues under these circumstances on many occasions.[9]
In order to ascertain if there truly is no positive law either authorizing or prohibiting the allowance of alimony for divorced men we must carefully examine the legislative expressions in the light of the other articles of the Civil Code pertaining to the application and construction of laws.[10] We are also mindful of the doctrine of reputable scholars, which teaches that civilian judges are not required to depend merely upon a logical analysis of the existing statutes, but may employ other recognized methods of interpretation. They may perform extensive exegesis to discover the original legislative intent; legislative texts may be interpreted so as to give them an application that is consistent with the contemporary conditions they are called upon to regulate; and a particular conflict of interests before the court may be resolved in accordance with the general policy considerations which induced legislative action rather than by reliance on logical deductions from the language of the text.[11] Both the codal and the doctrinal principles should be employed to discover the meaning of the words of the law.
The general policy consideration and practical reason which appear to have induced the legislature to provide alimony after divorce was to prevent divorced women without sufficient means from becoming wards of the state.[12] Although the legislative *309 history of Civil Code article 160 sheds little light on the different treatment accorded husbands and wives, the most reasonable and probable basis is the assumption that married men were capable of supporting dependents, whereas married women usually could not support themselves. Although the assumption may have had substantial empirical support at the time of the legislation's enactment, it is clearly outmoded in today's society in which nearly half of the married women are employed and contribute to the standard of living of their families.[13] The evolving nature of the role played by women in our state was clearly and emphatically recognized by the provision banning invidious gender based discrimination in the Louisiana Constitution of 1974.[14] Indeed, the debates at the 1973 Louisiana Constitutional Convention concerning the provision reflect that the delegates considered alimony to be an important statutory right and contemplated that the new equal protection clause would require that it be granted equally to both sexes.[15] Consequently, when we attribute to Article 160 the meaning that a present day legislator would have attributed to it, we must assume that he would have taken cognizance of the increasing and expanding nature of women's activities and responsibilities, as well as our constitution's prohibition of arbitrary or unreasonable gender based legal classifications, and that he would not have intended by the legislation to discriminate against husbands who have not sufficient means for their maintenance by declaring them ineligible for alimony after a divorce.
Accordingly, the question of alimony for a husband after divorce is a civil matter upon which there is no express or implied law,[16] and we are bound to proceed and decide according to equity. La.C.C. art. 21. Our appeal to natural law and reason informs us that the general policy considerations which induced the legislature to authorize alimony allowances for wives after divorce would also be served by granting such support to either spouse when the circumstances provided by Article 160 prevail. Equity and our constitution demand that the husband be awarded alimony under the same circumstances in which it can be claimed by the wife. For these reasons, we conclude that a Louisiana court may allow alimony to a husband after divorce, under the same circumstances in which it can be claimed by the wife, and that the contention of the defendant-respondent that Civil Code Article 160 denies equal protection of the law is without merit.

*310 II.
In the case at bar the original alimony award, contained in the 1971 divorce decree, was rendered with the consent of Dr. Loyacano. This consent amounted to a judicial admission on his part that his wife was entitled to alimony. Therefore, when Dr. Loyacano filed his rule to decrease or revoke the alimony, it was incumbent upon him to prove that Mrs. Loyacano's circumstances, or his own, had changed in order to obtain a reduction or revocation of the alimony. Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973); Fisher v. Fisher, 320 So.2d 326 (La.App. 3d Cir. 1975).
Although Dr. Loyacano had remarried, he stipulated that he could pay any amount of alimony ordered by the court. Therefore, a change in his circumstances was not urged as the basis for the reduction or revocation of the previous alimony award.
Dr. Loyacano introduced evidence that his former wife owned assets valued approximately as follows: savings and loan certificates of deposit, $20,000; bank accounts, $1200; pension fund contributions, $2500; corporate stock, $5,625; 1974 automobile, $5,300 (original cost); 1975 automobile, $5,500 (original cost); house, $41,500. Her liabilities included: $28,500 indebtedness secured by a mortgage on the house; $6,000 certificate of deposit pledge to finance the purchase of an automobile. The evidence also reflected that Dr. Loyacano had given her, over a period of time, $25,000 in cash, part of which was used for a down payment on her house. Mrs. Loyacano had elected to be a fulltime mother and homemaker, and was not otherwise employed at the time of the trial, although she had been a wage earner in the past.[17]
The trial court found that Mrs. Loyacano's circumstances had changed favorably but that she still lacked means sufficient for her maintenance. Accordingly, her alimony was reduced from $1,000 to $300 per month. The court of appeal determined that the lower court's finding of insufficient means was manifestly erroneous in the light of Frederic v. Frederic, 302 So.2d 903 (La.1974), and Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950), and set aside the alimony award.
In Smith v. Smith, this Court defined terms crucial to the requirement of Louisiana Civil Code Article 160 that the wife must be without sufficient means for her maintenance to be eligible for alimony after a divorce. We said that "means" included both income and property, and that "maintenance" consisted primarily of food, shelter and clothing. The opinion of the Court took pains, however, to point out that the wife need not be practically destitute to qualify for alimony, but that she could apply if she had some means which were not sufficient. With equal care the Court cautioned that a wife with property should not be made to fully deplete her capital before she is allowed alimony. But the Court did not find it necessary to decide to what extent the wife should be made to use up her capital before applying for the alimony, because it found that property and assets valued at $20,000 at the time of the divorce in 1948 were certainly sufficient means for her maintenance at that time. Therefore, the Court purposely left unanswered the question of what manner and rate of asset depletion may be required of the wife in calculating her entitlement to alimony.
A number of dimensions have been added to these definitions in later decisions by this Court. The meaning of "maintenance" was enlarged to include "reasonable and necessary transportation or automobile expenses, medical and drug expenses, utilities, household expenses, and the income tax liability generated by the alimony payments made to the former wife."[18] In Frederic v. Frederic,[19] *311 the element of the liquidity of the wife's assets was introduced as a factor which should be considered in determining whether her means were sufficient for her maintenance. The courts of appeal, in reviewing trial judges' determinations of "sufficient means," have considered the additional factors of the relative financial positions of the parties,[20] the type of asset under consideration and the consequences of its liquidation.[21]
All of these factors should be taken into consideration in determining whether alimony should be allowed, and, if so, in fixing the amount of the award. On the question of what extent of asset depletion, if any, should be required of a spouse before he or she may receive alimony, it is impossible to say what relative weight must be given to any one factor in a particular case. The court should instead apply a rule of reasonableness in light of all the factors named herein and any other circumstance relevant to the litigation. For example, in determining the rate at which a spouse may be required to deplete his or her assets, it may be pertinent to consider the mental and physical health of the parties, their age and life expectancy, the parties' other financial responsibilities, the relative ability, education and work experience of the parties, and the potential effect of any contemplated depletion of assets upon the children of the marriage. The problem is of such a nature as to be insusceptible of solution by any exact formula or monetary index, and the court should proceed with great caution and due regard for the probable long range effects of any depletion contemplated.
Under the provisions of Article 160 of the Civil Code, it is within the discretion of the trial judge to allow and fix the amount of alimony. The discretion granted by the code article means sound discretion, to be exercised by the trial judge, not arbitrarily or wilfully, but with regard to what is just and proper under the facts of the case. Fletcher v. Fletcher, 212 La. 971, 34 So.2d 43 (1948); Jones v. Jones, 200 La. 911, 9 So.2d 227 (1942); Abbott v. Abbott, 199 La. 65, 5 So.2d 504 (1941).
According to the evidence of record in the instant case, Mrs. Loyacano owned property having a net value of approximately $46,000. Some of the assets were easily susceptible of liquidation while others could only be converted to cash with difficulty and perhaps great loss in utility and value. From our review of the trial judge's reasons for judgment it is apparent that he considered the factors which have been presented in the jurisprudence and some of the additional ones suggested in this opinion. It is clear that the court determined Mrs. Loyacano had some means but not sufficient means for her support. It is evident also that the trial court judgment will have the effect of requiring her to deplete her assets to some extent but not as rapidly as if no alimony had been allowed.
The trial judge's decision was not contrary to the principles of law announced here or in our previous opinions.
Under all of the circumstances presented, including the factors mentioned earlier such as the relative financial positions of the parties, the counterproductive effects of requiring a sale of the family home and the potential effects on the children, as well as the circumstances of the case, it appears that the trial judge exercised sound discretion, did not decide arbitrarily or wilfully, and reached a reasonable and just result.
*312 The trial court judgment, therefore, should have been affirmed on appeal.
For these reasons the judgment of the court of appeal is vacated and the judgment of the trial court is reinstated. All costs are assessed to the defendant-respondent.
MARCUS, J., concurs and assigns reasons.
SUMMERS, J., dissents.
SANDERS, C. J., dissents and assigns written reasons.
MARCUS, Justice (concurring).
I do not agree with the majority that to allow only wives to collect alimony after divorce would amount to arbitrary and unreasonable discrimination against persons because of sex and thus a denial of equal protection under La.Const. art. 1, § 3 (1974). Nor do I consider it a violation of the equal protection clause of the fourteenth amendment to the United States Constitution. Rather, I consider that there are many good reasons to support alimony to a wife after divorce; therefore, La. Civil Code art. 160 provides a reasonable legislative classification, not arbitrary, and rests upon a ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated are treated alike. See discussion and compare Williams v. Williams, 331 So.2d 438 (La.1976) and State v. Barton, 315 So.2d 289 (La. 1975).
Moreover, I disagree with the majority that courts are permitted to allow alimony to a husband after divorce where the legislature has expressly allowed alimony after divorce only to a wife under conditions set forth in La. Civil Code art. 160. I consider the majority opinion in this respect amounts to legislation by the court.
However, I concur in the result reached by the majority because I do not consider that the trial judge abused his much discretion in allowing Mrs. Loyacano $300 per month alimony under the circumstances here presented.
Accordingly, I respectfully concur.
SANDERS, Chief Justice (dissenting).
Perhaps, the most obvious error in the judgment here is the postulation that the law is silent as to whether or not a husband is entitled to alimony after divorce. Article 160 of the Louisiana Civil Code authorizes alimony, but limits it to "the wife [who] has not been at fault." The article further requires that the wife be without "sufficient means for her support." The alimony is payable from the "property and earnings of the husband" but cannot exceed one-third of his income.
The language of the article clearly excludes a husband's entitlement to alimony from the wife. This exclusion is reinforced by the history of the article. Article 301 of the Code Napoleon (1804) allowed either husband or wife in necessitous circumstances to receive alimony if he or she had obtained a divorce. This provision was omitted in the Louisiana Civil Code of 1808, where divorce, as distinguished from separation from bed and board, was not recognized. Although divorce was authorized in the Louisiana Civil Code of 1825, the provision for alimony after divorce was intentionally omitted. Thus, no alimony was payable, since alimony after divorce is in the nature of a pension and must be specifically authorized. See Matheny v. Matheny, 205 La. 869, 18 So.2d 324 (1944); Player v. Player, 162 La. 229, 110 So. 332 (1926).
On March 19, 1827, the Legislature in "An Act Relative to Divorces" provided for alimony after divorce for the first time. The alimony was limited to "the wife who has obtained the divorce" and payable "out of the property of her husband." The identical provision was later reenacted in Act 307 of 1855. The provision was later incorporated in the Louisiana Civil Code of 1870 as Article 160. See C. E. Lazarus, "What Price Alimony," 11 La.L.Rev. 401, 412-415. The history of the statute demonstrates the intentional legislative restriction of alimony-after-divorce to the wife. Hence, resort to equity under Article 21 of the Louisiana Civil Code is unjustified.
*313 I agree with Mr. Justice Marcus that, because of present day economic realities, the separate classification of wives for alimony purposes has a fair and substantial relationship to the object of the legislation. In my opinion, it contains no constitutional infirmity. See Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); Williams v. Williams, La., 331 So.2d 438 (1976); State v. Barton, La., 315 So.2d 289 (1975).
Under Article 160, alimony is payable to the wife after divorce only if she does not have "sufficient means" for her own support.
The divorced wife in the present case has the following assets: savings and loan certificates of deposit, $20,000; bank accounts, $1,200; pension fund accumulations, $2,500; corporate stock, $5,625; 1974 automobile, original cost $5,300; 1975 automobile, original cost $5,500; house, $41,500. The husband gave the wife $25,000, a part of which was used as a down payment on her house. The home mortgage indebtedness was $28,500, and a $6,000 certificate of deposit was pledged to secure an unspecified balance on the purchase of an automobile.
As used in Article 160, means refers to available resources, such as property or money, from which the needs of life may be supplied. Ward v. Ward, La., 339 So.2d 839 (1976). Sufficient means refers to resources adequate to provide food, clothing, shelter, and other basic necessities. The wife has the burden of establishing her necessitous circumstances.
In Ward v. Ward, supra, this Court stated:
"Under Louisiana Civil Code Article 160, alimony after divorce is in the nature of a pension, obtainable by the former wife only when she has not been at fault and when she has not sufficient means for her support. Frederic v. Frederic, La., 302 So.2d 903 (1974); Bernhardt v. Bernhardt, La., 283 So.2d 226 (1973); Hays v. Hays, 240 La. 708, 124 So.2d 917 (1960); Brown v. Harris, 225 La. 320, 72 So.2d 746 (1954). This alimony after divorce is not awarded in an amount sufficient to support the former wife in the manner in which she is accustomed to live; rather, it is awarded in an amount sufficient to provide for her maintenance, which includes food, clothing, shelter, and other basic necessities; and the wife has the burden of establishing her necessitous circumstances. Bernhardt v. Bernhardt, supra; Vicknair v. Johnson (Vicknair), 237 La. 1032, 112 So.2d 702 (1959); Stabler v. Stabler, 226 La. 70, 75 So.2d 12 (1954)."
At the time of the trial, the crucial time for the alimony determination, the wife in the present case clearly had sufficient means for her support. Liquid assets included the bank accounts ($1,200); the corporate stock ($5,625); and the unpledged certificates of deposit ($14,000), aggregating in excess of $20,000. If the home equity is considered, the wife's means are more than $33,000.
In Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950), the Court held that a wife with $20,000 in war bonds, notes, and an automobile had sufficient means.
In Stabler v. Stabler, 226 La. 70, 75 So.2d 12 (1954), the Court held that a wife whose share of the community was valued at $20,000 had sufficient means.
In Fruehan v. Fruehan, La.App., 153 So.2d 75 (1963), the Court of Appeal affirmed the trial court's decision that $13,000 in cash and interest bearing notes constituted sufficient means.
In Rabun v. Rabun, 232 La. 1004, 95 So.2d 635 (1957), the wife who had assets of $11,000, consisting of $3,700 in cash, equity in a mortgaged home, and an interest bearing promissory note was held to have sufficient means when considered in connection with a monthly salary of $125.
In Frederic v. Frederic, La., 302 So.2d 903 (1974), this Court held that a wife who had received a check for $20,700, representing her share in the community real estate and had an unliquidated half interest in other community assets had sufficient means and was not entitled to post-divorce alimony. This Court stated:

*314 "As used in Article 160 reference to `means for her maintenance' refers primarily to food, shelter and clothing. Rabun v. Rabun, 232 La. 1004, 95 So.2d 635 (1957); Stabler v. Stabler, 226 La. 70, 75 So.2d 12 (1954).
"The test is not whether the wife has the means to support herself in the manner to which she is accustomed to live, but what will provide her with sufficient means for her maintenance, Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959), the wife having the burden of establishing her necessitous circumstances. Malone v. Malone, 260 La. 759, 257 So.2d 397 (1970). The amount necessary for maintenance of a divorced wife is to be determined by the circumstances of each particular case. Brown v. Harris, 225 La. 320, 72 So.2d 746 (1954); Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953).
"And in determining means for the wife's maintenance, her income is not the sole consideration. All of her means must be regarded to determine their sufficiency for her maintenance. Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950)."
Applying the principles of these decisions, I am of the opinion that the Court of Appeal correctly denied the wife alimony at this time. See La.App., 343 So.2d 365 (1977). I would affirm that judgment.
For the reasons assigned, I respectfully dissent.

ON REHEARING
SANDERS, Chief Justice.
The major issue presented here is whether Louisiana Civil Code Article 160 unconstitutionally denies husbands equal protection of the law. Fourteenth Amendment to the United States Constitution; Article I, § 3 of the Louisiana Constitution (1974).
We now hold that although Article 160 does not provide alimony to a needy husband, it is, nonetheless, constitutional and that here the wife is entitled to alimony.
The background facts, as stated on original hearing, are as follows:
"In 1971 Mrs. Neila LeBlanc Loyacano was granted a divorce from her husband, Dr. Eugene Loyacano, on the grounds of living separate and apart for two years pursuant to Louisiana Revised Statute 9:301. The default divorce judgment provided Mrs. Loyacano with $1,000 per month alimony and $1,000 per month for the support of their two minor children. Dr. Loyacano voluntarily supplemented these payments with extra sums which were discontinued upon his remarriage in February of 1974.
"Mrs. Loyacano filed a rule to increase both the alimony and child support awards in May of 1974. Following an involved procedural history, during which Dr. Loyacano filed rules to reduce the child support award and reduce or revoke the alimony, hearings were held on the respective rules in October of 1975. Child support was awarded in the amount of $500 per month per child and the alimony was reduced to $300 per month. Both parties appealed to the court of appeal. The child support award was affirmed but the $300 per month alimony award was revoked."
In this Court, the wife seeks restoration of the alimony award.

I.
Does LSA-C.C. Art. 160 allow alimony to a needy husband?
The very first article of the Civil Code provides that "[l]aw is a solemn expression of legislative will." Article 2 discusses the attributes of the law, stating: "[i]t orders and permits and forbids, it announces rewards and punishments, its provisions generally relate not to solitary or singular cases, but to what passes in the ordinary course of affairs." "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." LSA-C.C. Art. 13.
The language of Article 160 clearly excludes a husband's entitlement to alimony from his wife. It limits alimony to "the wife" payable from the "property and earnings *315 of the husband." This exclusion is reinforced by the history of the article. Article 301 of the Code Napoleon (1804) allowed either husband or wife in necessitous circumstances to receive alimony if he or she had obtained a divorce. This provision was omitted from the Louisiana Civil Code of 1808, where divorce, as distinguished from separation from bed and board, was not recognized. Although divorce was authorized in the Louisiana Civil Code of 1825, the provision for alimony after divorce was intentionally omitted. Thus, no alimony was payable, since alimony after divorce is in the nature of a pension and must be specifically authorized. See Matheny v. Matheny, 205 La. 869, 18 So.2d 324 (1944); Player v. Player, 162 La. 229, 110 So. 332 (1926).
On March 19, 1827, the Legislature in "An Act Relative to Divorces" provided for alimony after divorce for the first time. The alimony was limited to "the wife who has obtained the divorce" and payable "out of the property of her husband." The identical provision was later reenacted in Act 307 of 1855. The provision was later incorporated in the Louisiana Civil Code of 1870 as Article 160. See C. E. Lazarus, "What Price Alimony," 11 La.L.Rev. 401, 412-415. The history of the article demonstrates the deliberate legislative restriction of alimony-after-divorce to the wife.
Article 160 speaks clearly on the subject of alimony. It limits alimony to needy wives.

II.
Is Article 160 constitutional?
It is well settled that equal protection of the law does not require that all persons in all matters be treated in exactly the same manner; neither does it prohibit all classifications.
Article I, Section 3 of the state constitution provides:
"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations." (Emphasis added.)
The section prohibits only arbitrary and unreasonable classification. If a classification is not arbitrary or unreasonable, it has no constitutional infirmity.
We interpreted the foregoing constitutional provision in State v. Barton, La., 315 So.2d 289 (1975), as follows:
"The first sentence of the section was intended only as a restatement of the federal equal protection guarantee . . . The second sentence (which uses absolute language), in comparison with the third sentence (which employs the arbitrary, capricious, or unreasonable formula), permits no discrimination because of race or religious ideas, beliefs, or affiliations.
"The third sentence delineates the limitation on the power of the state to discriminate by law against persons of specified classes, including members of either sex. The limitation imposed does not absolutely preclude the legislature from defining the range of persons affected by legislation according to the various classes listed in the section; rather, it proscribes the unreasonable or arbitrary definition of those affected according to class. Accordingly, if the discrimination that results from the legislative classification is found to be within reason, the statute is not in violation of the constitution."
We later cited that language with approval in Williams v. Williams, La., 331 So.2d 438 (1976). In upholding the constitutionality of alimony pendente lite, we reasoned further that:
"Nor does the equal protection clause of the fourteenth amendment to the United States Constitution deny this state the power to accord differing treatment to the sexes in its legislation. The United States Supreme Court has held that the equal protection clause does not prohibit a legislative classification based *316 on sex, provided that the classification is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). See also Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973)."
We have upheld both civil code articles and criminal statutes classifying males and females differently against constitutional attacks. In Williams v. Williams, supra, Civil Code Article 148 weathered a constitutional challenge based on equal protection. That article allows alimony pendente lite only to a wife. Similarly, in State v. Barton, supra, a statute criminalizing only a husband's non-support of his family survived the same equal protection attack.
Article 160 has previously withstood a direct constitutional challenge on another basis, due process of the law. In Hays v. Hays, 240 La. 708, 124 So.2d 917 (1960), we upheld this article despite its sex based classification under the Fourteenth Amendment to the United States Constitution and Article 1, § 2 of the Louisiana Constitution of 1921.
Statutes elsewhere allowing alimony only to wives have withstood the equal protection argument which defendant asserts. Murphy v. Murphy, 232 Ga. 352, 206 S.E.2d 458, cert. denied, 421 U.S. 929, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1974). Bugden v. Bugden, 225 Ga. 413, 169 S.E.2d 337, cert. denied, 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1969); M. v. M., 321 A.2d 115 (Del.Supr. 1974); Hendricks v. Hendricks, 535 S.W.2d 668 (Tex.Civ.App.1976).
The United States Supreme Court has upheld the constitutionality of a Florida statute granting widows an annual property tax exemption of $500, but offering no analogous benefit for widowers. Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).
Likewise, in Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), the Court upheld the constitutionality of a California disability insurance system which excluded benefits for normal pregnancy and delivery. The Court reasoned that a state may take one step at a time in legislatively solving problems. As long as the legislative attempts are rationally supportable, the courts will not impose their judgment. Quoting from Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Court stated, " `[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all.'" (Emphasis added.)
In passing upon constitutionality, it is not within the province of this Court to evaluate the legislative policy embodied in the statute. Modification addresses itself to the legislature.
We conclude that Article 160 is constitutional.

III.
Is plaintiff entitled to alimony?
A majority of this Court agrees that the trial court's alimony award of $300 per month is correct. For the reasons set forth in Section II of our original opinion, the trial court's alimony award is reinstated.[1]
For the reasons assigned, the judgment of the Court of Appeal is reversed, and the judgment of the district court, awarding the wife $300 per month alimony, is reinstated and made the judgment of this Court in accordance with the decree on original hearing.
DIXON, J., concurs.
*317 TATE, J., concurs for the reasons assigned.
DENNIS, J., concurs in decree only and assigns reasons.
SUMMERS, J., concurs in part and dissents in part and dissents in part for the reasons assigned.
CALOGERO, J., dissents and assigns reasons.
TATE, Justice, concurring.
I respectfully concur for the reasons assigned by the original majority opinion. The provision granting a divorced wife alone the right to alimony is saved from unconstitutionality on the ground of unreasonable gender-based discrimination only because, interpreting the Civil Code as a whole, a divorced husband in need has the same alimony rights.
DENNIS, Justice, concurring in decree only.
I concur in the decree for the reasons stated in the original majority opinion.
It should be noted that our various opinions today leave the status of Civil Code Article 160 in a state of considerable doubt. Three members of the Court are of the opinion that the article is constitutional and does not deny equal protection of the laws although it discriminates on the basis of sex in granting an important statutory right. Three other members of the Court are of the opinion that if the article were to be interpreted to deny alimony to one sex that it would be unconstitutional, but that it does not contain such a prohibition; and that, since there is other authority in the civil code for granting alimony rights to both sexes, Article 160 does not deny equal protection of the laws. One member of the Court is of the view that Article 160 is unconstitutional.
Thus it is arguable whether, after our lack of decisiveness today, Civil Code Article 160 is either valid or invalid. Accordingly, while I disagree with much of the plurality opinion, I heartily concur that this matter very much recommends itself for legislative action.
SUMMERS, Justice (concurring in part and dissenting in part).
I agree that Civil Code Article 160 is constitutional for the reasons stated by the Chief Justice in the opinion authored for the Court on rehearing. However, I dissent from Part III of the opinion on rehearing awarding alimony to the wife.
CALOGERO, Justice, dissenting.
I believe that it is too clear for argument that Article 160 of the Louisiana Civil Code which allows wives (and not husbands) to claim alimony after divorce unconstitutionally denies to husbands equal protection of the laws as guaranteed by the state and federal constitutions. For a related matter and a fuller expression of my views, see the dissent in Corpus Christi Parish Credit Union v. Selina K. Martin, 358 So.2d 295 (La. 1978), handed down this day. In this case, I would invalidate Article 160 because of its gender-based discrimination but I would not usurp the legislative function by grafting onto our law a constitutionally permissible alimony provision. I believe that function should and will be performed by the legislature.
NOTES
[1] A default judgment on Mrs. Loyacano's rule was rendered on June 7, 1974 which increased the alimony and child support awards to $1100 and $1500 per month respectively. Dr. Loyacano subsequently filed a motion for a new trial and a rule to reduce the child support and to reduce or revoke the alimony. The trial judge denied the motion for new trial and dismissed the rules. Dr. Loyacano appealed these rulings and the Fourth Circuit Court of Appeal set aside the default judgment of June 7, 1974, because no change in circumstances was shown at the hearing on Mrs. Loyacano's rule to justify the increases. The case was remanded to the trial court for reconsideration of the rules filed by both parties. Loyacano v. Loyacano, 311 So.2d 910 (La.App. 4th Cir. 1975), writ refused, 313 So.2d 847 (La.1975).
[2] The issue of child support is not before us.
[3] Louisiana Civil Code Article 160 provides, in pertinent part:

"When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income."
[4] Professor Pascal has observed:

"No legislation makes provision for alimony for the husband after divorce and, the marriage being terminated, there is no possibility of reasoning to the husband's right thereto under Article 119 of the Civil Code. Should an `Equal Rights Amendment' to the U.S. or State Constitution be adopted, however, probably either the husband will have to be awarded alimony under the same circumstances in which the wife can claim it, or alimony will have to be denied the wife in every case." Pascal, Louisiana Family Law Course, § 11.19, p. 178 (1975).
[5] See, Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
[6] La.Const. of 1974, Article I, § 3 provides:

"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
[7] "* * * Women's activities and responsibilities are increasing and expanding. Coeducation is a fact, not a rarity. The presence of women in business, in the professions, in government and, indeed, in all walks of life where education is a desirable, if not always a necessary, antecedent is apparent and a proper subject of judicial notice. * * *" Stanton v. Stanton, 421 U.S. 7, 15, 95 S.Ct. 1373, 1378, 43 L.Ed.2d 688, 695 (1975).

"* * * Statistics compiled by the Department of Labor indicate that in October 1974, 54.2% of all women between 18 and 64 years of age were in the labor force. United States Dept. of Labor, Women in the Labor Force (Oct. 1974). * * *" Taylor v. Louisiana, 419 U.S. 522, 535, n. 17, 95 S.Ct. 692, 700, 42 L.Ed.2d 690, 701 (1975).
"In 1971, 43% of all women over the age of 16 were in the labor force, and 18% of all women worked full time 12 months per year. See U.S. Women's Bureau, Dept. of Labor, Highlights of Women's Employment & Education 1 (W.B.Pub.No.72-191, Mar. 1972). Moreover, 41.5% of all married women are employed. See U.S. Bureau of Labor Statistics, Dept. of Labor, Work Experience of the Population in 1971, p. 4 (Summary Special Labor Force Report, Aug. 1972). * * *" Frontiero v. Richardson, 411 U.S. 677, 689, n. 23, 93 S.Ct. 1764, 1772, 36 L.Ed.2d 583, 593 (1973).
"Although the underlying assumption that married men support their families and married women do not may once once [sic] have borne a substantial and self-perpetuating relationship to hard economic realities, it was not entirely accurate at the time (at the turn of the century, 5 million women workers comprised 18 percent of the total labor force); clearly, it is outmoded in a society where more often than not a family's standard of living depends upon the financial contributions of both marital partners. (Kanowitz, Women and the Law (1969) p. 100; U.S. Bureau of the Census, Statistical Abstract of the U.S. (96th ed. 1975 p. 346))." Arp v. Workers' Compensation Appeals Board, 19 Cal.3d 395, 138 Cal.Rptr. 293, 299, 563 P.2d 849, 854-5 (1977).
[8] In connection with matters of contractual interpretation Article 1965 declares that equity "is founded in the christian principle not to do unto others that which we would not wish others should do unto us . . ." La.C.C. art. 1965.
[9] Professor Yiannopoulos' random selection of cases provides an insight into the jurisprudence under Article 21 of the Civil Code:

"* * * In Minyard v. Curtis Products, Inc. [251 La. 624, 205 So.2d 422 (1967)], the Supreme Court took a decisive step toward generalization of the remedy of unjust enrichment in Louisiana, relying expressly on Articles 21 and 1965 of the Civil Code. In West v. Ortego [325 So.2d 242 (La. 1975)], in the absence of a rule of positive law, the Louisiana Supreme Court resorted to Article 21 of the Civil Code for the apportionment of workmen's compensation benefits between the community of acquets or gains and the separate property of the injured spouse. In Jacob v. Roussel [156 La. 171, 100 So. 295 (1924)], when the receiver of an insolvent corporation abandoned an existing lease prior to its termination and the owner was compelled to grant a new lease at a lower rental, the court held the receiver responsible for the difference, this being the `equitable' solution in the absence of positive law. In Crescent City Gaslight Co. v. New Orleans Gaslight Co. [27 La.Ann. 138 (1875)], the court granted a remedy for the reparation of an injury in the absence of procedural law governing the action. In Frazier v. Willcox [4 Rob. 517 (La. 1843)], when a debtor was wasting his property to the prejudice of his creditors, the court allowed the creditors to take conservatory measures by reference to Article 21. In Ouachita Parish Police Jury v. Northern Ins. Co. [176 So. 639 (La.App. 2d Cir. 1937)], when a fire risk had been covered by several insurance companies, the court maintained that there should be a proportional distribution of the loss among them. Finally, in Lawton v. Smith [146 So. 361 (La.App. 2d Cir. 1933)], the court apparently adopted the notion of abuse of right, holding that equity prevents a first mortgagee from exercising his choice in such a way as to injure the second mortgagee without benefit to himself." A. Yiannopoulos, Louisiana Civil Law System, § 38 (1977).
[10] La.C.C. arts. 13-20.
[11] A. Yiannopoulos, Louisiana Civil Law System, § 47, pp. 89-93 (1977); Barham, A Renaissance of the Civilian Tradition in Louisiana, 33 La.L.Rev. 357, 371 (1973); Tate, Law Making Function of a Judge, 28 La.L.Rev. 211 (1968); Tate, Louisiana and the Civil Law, 22 La.L.Rev. 727 (1962).
[12] In theory, according to Planiol, alimony was not a continuance of the obligation of support which the spouses owe to each other mutually during the marriage, but was founded upon the delictual principle "whatever act of man causes damage to another obliges him by whose fault it happened to repair it." 1 M. Planiol, Civil Law Treatise, No. 1259 (La.St.L.Inst. transl. 1959). However, it would appear that the underlying practical reason for alimony is to provide support for those who need it, with a minimum amount of social dislocation, by extracting it from those who have provided similar maintenance in the past. As Planiol observes:

"The community of life permitted the spouse without means to share the welfare of the other. Suddenly through no fault of the spouse in question, he or she finds himself or herself devoid of resources and plunged into poverty. It is manifestly in such a case as this that the guilty party should be made to bear the consequences of his wrong acts." Id. at § 1259. It is clear that without the antecedent marital obligation of mutual support there could be no breach of a quasi-delictual obligation or resulting damage upon divorce. Moreover, under Article 160 of our present Civil Code, the wife may be allowed alimony without proving the husband's fault. According to Justice Barham, the provision for this alimony is a "legislative attempt to fix economic responsibility for women who, having been deprived by divorce of their husbands' earnings, are now without means or income for their maintenance. This socio-economic legislation is intended to assign responsibility for the dependency of such divorced women so as to relieve them from destitution and the State from their care." Montz v. Montz, 253 La. 897, 907, 221 So.2d 40, 44 (1969) (dissenting opinion).
[13] Glick and Norton, "Marrying, Divorcing and Living Together in the U.S. Today," Population Bulletin, Vol. 32, No. 5, Oct. 1977, pp. 10-12. (A publication of the Population Reference Bureau, Inc.); H. Hayghe, "Families and the Rise of Working WivesAn Overview," Monthly Labor Review, May 1976, pp. 12, et seq.; H. Hayghe, "Special Labor Force ReportMarital and Family Characteristics of the Labor Force," Monthly Labor Review, Nov. 1975, pp. 52, et seq.; Kanowitz, Women and the Law, p. 100 (1974).
[14] La.Const.1974, Art. I, § 3.
[15] Another indication of this intention is seen in the manner in which Article I, § 3 was produced by the convention. The original committee proposal, which contained language that could be read as an absolute ban against gender based discrimination, was replaced by a compromise which, as amended and finally adopted, forbids arbitrary, capricious or unreasonable discrimination because of sex. Since both the proponents of the original proposal and its opponents, who favored simply borrowing the general language of the Fourteenth Amendment's equal protection clause, expressed sentiments for the retention of alimony laws, the almost unanimous vote for the compromise indicates an expectation that alimony would be allowed to both spouses. See, XII, Constitutional Convention of 1973, Verbatim Transcripts, August 29, 1977, pp. 57, et seq.; August 30, 1973, pp. 1-6.
[16] See, footnote 4, supra.
[17] Only a minority of this Court is of the opinion that a woman's earning capacity should be considered, together with the need for her services at home as a parent, the availability of suitable employment, and other relevant factors, in determining whether she has sufficient means for her support. See, Ward v. Ward, 339 So.2d 839 (La.1976); see also, Ward v. Ward, 332 So.2d 868 (La.App. 4th Cir. 1976).
[18] Bernhardt v. Bernhardt, 283 So.2d 226, 229 (La.1973).
[19] 302 So.2d 903 (La. 1974). This consideration would include determining whether assets, such as thrift and annuity funds, are presently available for maintenance. See, Bryant v. Bryant, 310 So.2d 648 (La.App. 1st Cir. 1975).
[20] Phillpott v. Phillpott, 321 So.2d 797 (La.App. 4th Cir. 1975). This Court has also alluded to the "highly inequitable" nature of an alimony award in which the wife would be "permitted to retain [her property] and at the same time cause her husband to deplete his." Smith v. Smith, supra, 47 So.2d at 35.
[21] See, e.g., cases discussing whether sale of the family home should be required, Phillpott v. Phillpott, supra; Bryant v. Bryant, 310 So.2d 648 (La.App. 1st Cir. 1975); Nicolle v. Nicolle, 308 So.2d 377 (La.App. 4th Cir. 1975); Hardy v. Hardy, 214 So.2d 231 (La.App. 4th Cir. 1968).
[1] For the reasons set forth in the author's dissent to the Court's original opinion, he believes that the Court of Appeal correctly denied the wife alimony at this time.