369 So.2d 271 (1979)
Nita Jean Welch, wife of Donald J. HINGLE.
v.
Donald J. HINGLE.
No. 10423.
Court of Appeal of Louisiana, Fourth Circuit.
March 13, 1979.
C. James Gelpi, New Orleans, for relator.
Dudley D. Flanders, New Orleans, for respondent.
Before REDMANN, STOULIG and BEER, JJ.
A husband invokes our supervisory jurisdiction to halt temporary pre-divorce alimony proceedings by his wife as an adjunct to her suit for separation from bed and board. The husband relies on Orr v. Orr, 1979, ___ U.S. ___, 99 S.Ct. 1102, 59 L.Ed.2d 306, as effectively invalidating under U.S.Const. amend. 14, as denying equal protection of the law, the Louisiana temporary alimony law, Article 148 of the Louisiana Civil Code.[1]
La.C.C. 148 is couched in terms of gender of the spouses. We hold, nevertheless, as authorized by C.C. 17 [2] and 21[3] and, in keeping with the civil law tradition of "extensive interpretation," Geny, Method of Interpretation (La.Law Inst. trans.) § 105, and in view of the spouses' mutual obligations of "fidelity, support and assistance," C.C. 119, which survive at least in part until final divorce, Hillard v. Hillard, 1954, 225 La. 507, 73 So.2d 442, and in consonance *272 with Whitt v. Vauthier, La.App. 4 Cir. 1977, 316 So.2d 202, writ refused, La., 320 So.2d 558, cert. denied 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360, that the operative principle of C.C. 148 is not gender but need, and that accordingly C.C. 148 is properly interpreted to allow temporary alimony to be awarded to either spouse in need if the other spouse has the means to pay. Alternatively, we would hold that C.C. 119 by itself obliges either undivorced spouse with means to support the other when in need.
Support for the extensive interpretation of C.C. 148 is found in Loyacano v. Loyacano, La.1978, 358 So.2d 304, U.S. appl. pending, in that (as Mr. Justice Dennis notes, in his concurrence on rehearing, Id. at 317) three members of the Louisiana Supreme Court adhere to the opinion on original hearing that the permanent alimony law, C.C. 160, despite its phrasing in terms of gender, does not deny alimony to ex-husbands, and that "a Louisiana court may allow alimony to a husband . . . under the same circumstances in which it can be claimed by the wife . . . ." Id. at 309. Support for non-discriminatory pre-divorce alimony from C.C. 119 is found in Hillard, supra, and more recently in Mr. Justice Calogero's dissent in Williams v. Williams, La.1976, 331 So.2d 438, 442, 443, asserting that C.C. 119 by itself supports pre-divorce alimony for a needy spouse of either sex. Thus a total of four of the present seven justices espouse the view, although for differing reasons, that pre-divorce alimony is available to either spouse on the same terms. There is thus no denial of equal protection in the Louisiana law of pre-divorce alimony and that law is not invalidated by U.S.Const. amend. 14.
Writs are therefore refused.
BEER, J., concurring with reasons.
BEER, Judge, concurring.
In Clary v. Clary, 341 So.2d 628, decided by this court in January of 1977, I concurred with the observation that: "Alimony is notor should not bethe `spoil' of matrimonial warfare . . ." and took issue with our state's jurisprudentially imposed preoccupation with fault in determining alimony awards.
Fourteen months later, in Dixon v. Dixon, La.App., 357 So.2d 856 (1978), I concurred again, observing:
"Progress appeared to have been achieved by the codification of Article 141 since it seemed to provide a more realistic approach to the obtaining of separation from bed and board. However, its usefulness is frustrated by the inclusion of an automatic mutual fault determination. While correctly acknowledging that many separations are the result of mutual failure on the part of husband and wife, the article requires absolute, unequivocal and irrevocable disallowance of alimony when it (the article) is used as the basis for obtaining a judgment of separation. Parties to a wretchedly unhappy marriage, each of whom honestly acknowledges their own failings, must be reluctant to invoke Article 141 because of its absolute fault finding provision. Thus, except for shortening the time requirements, Article 141 is not really much of an improvement over the ordinary abandonment type separation suit.
I believe that the underlying problem results from preoccupation with fault determination concurrent with judgment rendition in domestic relations cases. I question the usefulness and validity of those decisions which have generated such preoccupation."
Eight months later, in Rittiner v. Sinclair (Rittiner) (number 9421 on the docket of this court, handed down on November 2, 1978), I observed:
"We continue to be preoccupied with `fault' (which Webster defines as a moral weakness less serious than a vice), and that preoccupation continuesmore often than notto result in knee jerk determinations of `mutual fault.'
It is an oversimplification to say that a marriage of 25 or 30 years which has gone stale, with resulting degrees of disappointment, contempt, disgust and, finally, *273 abhorrence on the part of the parties, is the result of `mutual fault' to the extent that such determination absolutely preempts any consideration of alimony. Unless one or the other of the parties has conducted himself or herself in a totally abhorrent and classically unacceptable way, the determination of an award of permanent alimony should not be irrebuttably preempted on a premise of such a disjointed, nebulous concept as `mutual fault.' What is, in most cases, nothing more or less than mutual disillusionment should not summarily deprive either party of their justiciable right to seek alimony." (Emphasis mine.)
Thus, for over two years, I have questioned the jurisprudential treatment of the alimony issue in the courts of our statenot from the standpoint of equal protection but from the standpoint of realism and common sense, believing strongly that the central guideline should be needinstead of fault (or gender).
I concur in the result reached here by the majority and look forward to the day when alimony awards will be based primarily on need as shown by the particular circumstances of each particular case.
NOTES
[1] If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband.
[2] Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another.
[3] In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.