471 So.2d 895 (1985)
Sandra Gayle Noah HARLOW, Plaintiff-Appellee,
v.
Cecil Eldon HARLOW, Defendant-Appellant.
No. 17017-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*896 Booth, Lockard, Politz, Lesage and D'Anna by Nyle A. Politz, Shreveport, for defendant-appellant.
James B. Wells and Associates, by James B. Wells, James D. Slack, Bossier City, for plaintiff-appellee.
Before HALL, C.J., and FRED W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
A husband appeals from a permanent alimony award of $200 a month to a wife who has a gross salary as a school teacher of just over $18,000 a year, in addition to a previous child support award of $1,200 a month for three children. We reverse.
Plaintiff in this cause is Sandra Gayle Noah Harlow. Defendant herein is Cecil Eldon Harlow, plaintiff's former husband. These two parties were married on March 4, 1967 and were divorced by a judgment filed August 21, 1984. Three children were born of this marriage, Jay, age 14, John, age 12, and Jody, age 2. After the hearing of the rule nisi relative to the permanent alimony award, Cecil Harlow was ordered to pay Sandra Harlow permanent alimony at the rate of $200 per month.
Plaintiff is currently employed with the Bossier Parish School System. Her gross pay is $1,511.25 per month. Her net pay after payroll deductions is $1,018 per month, as revealed by Exhibit J-1, her representative payroll record showing her salary for September, 1984. Mrs. Harlow's expense affidavit showed expenses for herself and the children of $5,400 a month. This affidavit showed a net income of approximately $937 from her teaching position. This sum is approximately $80 less than shown on her representative payroll record. The difference results from a $50 a month credit union deduction for savings and a $30 insurance policy for income protection. Adding the savings deduction back to the stated monthly income as well as considering the $1,200 a month child support gives Mrs. Harlow a monthly income of approximately $2,185 resulting in a monthly deficitper her expense listof approximately $3,210.
Appellant's 1983 tax return showed an adjusted gross income of $46,300. His income and expense affidavit signed October 9, 1984, the date of the hearing on the rule establishing the alimony herein, showed a gross salary of $3,750 per month for $45,000 a year. That affidavit also reflected approximately $1,045 in salary deductions which were only for FICA and taxes. Appellant's submitted expense list was unusually modest, showing total expenses of $2,323 which included the monthly child support obligation of $1,200.
On appeal the defendant-appellant makes three assignments of error: (1) The trial court erred in failing to consider the short term nature of the mortgage and automobile notes in its consideration of the recipient spouses' monthly necessities. (2) The trial court erred in allowing plaintiff-appellee $200 per month in permanent alimony in light of her established earnings in excess of $1,500 per month. (3) The trial court erred in allowing Mrs. Harlow permanent *897 alimony for such items as charitable contributions, birthday and Christmas gifts, loans to relatives and employment expenses.
Louisiana Civil Code Article 160 requires that a spouse must be without sufficient means for maintenance in order to be eligible for alimony after divorce. Therefore, plaintiff's three assignments of error present the single issue of whether this spouse is without sufficient means for her "maintenance," thereby entitling her to permanent alimony. Mrs. Harlow's means include her $18,000 yearly salary and her $1,200 monthly child support stipend.[1] No question is presented for review with respect to liquidity of assets or other means.
The issue becomes simply whether these means provide sufficient maintenance within our jurisprudential definition. Maintenance includes food, shelter and clothing, and also reasonable and necessary expenditures for an automobile or other transportation, utilities, medical and drug expenses, household expenses and the income tax liability generated by the alimony payments made to the former spouse. Loyacano v. Loyacano, 358 So.2d 304 (La. 1978); Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973). The claimant spouse seeking permanent alimony has the burden of establishing his or her necessitous circumstances. Frederic v. Frederic, 302 So.2d 903 (La.1974). The trial court possesses broad discretion in making alimony determinations, and its awards will not be disturbed absent clear abuse of discretion. Jackson v. Jackson, 275 So.2d 456 (La. App.2d Cir.1973).
Appellant's initial assertion that the trial court erred in failing to take into account that Mrs. Harlow would be relieved of certain monthly expenses in February, 1985 is without merit. This is a matter that addresses itself to future deliberations and review. McLin v. McLin, 434 So.2d 1234 (La.App. 1st Cir.1983).
However, a spouse who is working full-time for a respectable salary who has no unusual expenses or obligations is not in necessitous circumstances so as to justify an award of permanent alimony. Dugas v. Dugas, 428 So.2d 1059 (La.App. 1st Cir. 1983); Heck v. Heck, 417 So.2d 31 (La.App. 1st Cir.1982); Silas v. Silas, 399 So.2d 779 (La.App.3d Cir.1981), writ denied, 404 So.2d 278 (La.1981).[2]
This jurisprudence considered, Mrs. Harlow is undoubtedly employed full-time at a respectable salary. Therefore, the issue in the instant cause is not whether Mr. Harlow can afford the $200 a month, or whether Mrs. Harlow can "use the money." The sole issue is whether or not she has unusual or major obligations for the necessities of life as defined by Loyacano, supra, and Bernhardt, supra.
The expenses of the plaintiff are so grossly inflated that it is difficult to evaluate what her true basic needs are. For example, it is interesting to observe that during the period of separation while plaintiff was netting $700 a month from a more modest salary at a private school than she now enjoys, she was also receiving $550 per month as temporary alimony in addition to the $1,200 child support. Thus, the effect of plaintiff's evidence with respect to expenses is that her large alleged monthly deficit has been continuous since the 3rd of December, 1982, the date the original alimony and child support were made effective. This seems unlikely. The conclusion is inescapable that she either greatly exceeded her means or is exaggerating the necessity to spend $5,400 a month. Moreover, it is apparent that this expense level could not have been supported during the marriage by even a good year for Mr. *898 Harlow's insurance business and Mrs. Harlow's private school salary.
It is difficult to credit plaintiff's unsubstantiated testimony that she owes her father $350 a month for repayment of funds advanced to her since the separation. During her separation, she received a significant level of alimony and child support. Also, she lists the credit union savings account both as a deduction from her salary and as an expense item. The deduction for savings is not a necessity and neither is the large sum listed for church tithing. Loyacano, supra. She testified that she was in the need of caps for her teeth which would cost $400 a month yet she listed dental insurance as an expense item. She admittedly determined her utility expenses by taking her gas expense in winter and her electric expense in the summer and multiplying each by twelve.
The evidence indicates that Mrs. Harlow does indeed have some medical problems which require regular treatment. However, as the trial court found, she has medical insurance through her employment which should pay approximately eighty percent of her medical expenses. The trial court determined that $100 a month was an appropriate sum to be allowed for her medical expenses beyond insurance, as well as to cover any medical expenses for the children beyond the medical insurance which is maintained on them. This seems generous since she testified that she is paying a premium to duplicate the medical insurance on the children which her husband has. Thus, it appears that some of the over $100 a month she spends in insurance premiums, to include the income protection insurance, is probably unnecessary.[3] However, she has a "respectable salary" and these are decisions which are hers to make. These are also factors for us to consider in determining whether she has unusual obligations for necessities. Moreover, any expenses which solely involve the children, such as their medical expenses, are not an appropriate consideration here.
Thus, while conceding we suffer from some confusion from the nature of plaintiff's inflated presentation, try as we might, we are unable to discern that Mrs. Harlow's expenses for basic necessities are unusual, or that she has necessary obligations of an unusual nature.
In sum, it is our view that plaintiff has not borne the burden of showing on this record that her substantial salary is insufficient to provide her with the necessities of life as defined by the Louisiana jurisprudence. We therefore determine that the trial court's award of alimony is manifestly erroneous and should be reversed.
The judgment of the trial court awarding permanent alimony to plaintiff herein, Sandra Gayle Noah Harlow, is reversed and those demands are rejected.
REVERSED.
HALL, C.J., concurs in the result.
NOTES
[1] Mr. Harlow is obligated to maintain medical insurance on the children in addition to the required child support. Mrs. Harlow testified she maintains similar coverage because Mr. Harlow would not process the claims, a contention he denied.
[2] In Dugas, the plaintiff had a salary of $1,652 a month. The Heck plaintiff's salary was over $1,165 per month, and in Silas, plaintiff's salary was $1,000 a month.
[3] She testified that the purpose of this income protection policy was to pay her salary and also pay a portion of a substitute should she suffer an illness causing her absence beyond her sick leave days. The wisdom of this decision is suspect. See Mitchell & Robinson v. Tillman, 469 So.2d 363 (La.App.2d Cir.1985) wherein we recognized the longstanding jurisprudence that once a teacher's sick leave is exhausted, school boards may only "dock" that teacher for the cost of her substitute.