379 So.2d 1206 (1980)
James O. MOSS, Jr., Plaintiff-Appellee,
v.
Sara Ann Bishop MOSS, Defendant-Appellant.
No. 7406.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1980.
*1207 McHale, Bufkin & Dees, Michael K. Dees, Lake Charles, for defendant-appellant.
Anderson, Leithead, Scott, Boudreau & Savoy, Richard L. Savoy, Lake Charles, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
DOMENGEAUX, Judge.
From an adverse judgment rendered by the Fourteenth Judicial District Court, Sara Ann Bishop Moss has perfected this appeal to request (1) permanent alimony, and (2) an increase in the amount of child support awarded to her. No appeal has been taken from those portions of the judgment which granted James O. Moss, Jr. a divorce based on living separate and apart from his former wife for at least one year from the date of their legal separation, and which awarded to Mrs. Moss the permanent care, custody, and control of the four minor children born of the marriage between Mr. and Mrs. Moss. The four children, all boys, were aged 17, 15, 14, and 9 at the time of trial.
At the time of the separation, the Court ordered Mr. Moss to pay $400.00 per month as alimony pendente lite and $600.00 per month as child support at a time when all four of the children were residing with their mother. In the judgment of divorce Mrs. Moss was awarded no alimony and the child support was increased to $250.00 per month for each of the two children then residing with their mother, while it was decreased to $100.00 per month for each of the other two children whenever they resided with her.

POST-DIVORCE ALIMONY
Article 160 of the Louisiana Civil Code authorizes a judicial award of alimony after divorce to the spouse in need. When trial of this dispute was conducted, Article 160 read as follows:
"When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
1. The wife obtains a divorce;
2. The husband obtains a divorce on the ground that he and his wife have been living separate and apart, or on the ground that there has been no reconciliation between the spouses after a judgment of separation from bed and board, for a specified period of time; or
3. The husband obtained a valid divorce from his wife in a court of another state or country which had no jurisdiction over her person.
This alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries."[1]
*1208 By the terms of Article 160 Mrs. Moss might be eligible for alimony of up to one-third of her former husband's income since she was without fault. However, she bears the burden of proving that she has insufficient means for her support. Bowman v. Bowman, 355 So.2d 564 (La.App. 3rd Cir. 1978); Pleasant v. Pleasant, 362 So.2d 1171 (La.App. 2nd Cir. 1978).
The term "support" or "maintenance" has been interpreted to include food, clothing, and shelter, the basic necessities of life, Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950), as well as reasonable and necessary transportation expenses, utility expenses (such as gas and electricity), medical and drug expenses, household expenses, and income tax liability generated by the alimony payments, Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973).
The only evidence of Mrs. Moss' monthly expenditures for her support is a handwritten list offered as evidence which Mrs. Moss read during her testimony. On the basis of the list Mrs. Moss calculated her monthly expenses to be about $2,000.00. Counsel for plaintiff objected to the introduction of the list since Mrs. Moss could produce no receipts or cancelled checks or other evidence which would have supported her claimed expenses.[2] The Judge overruled the objection and allowed the list to be received in evidence as an estimate. We note here that the list included many expenses which are not within the scope of Article 160, such as pleasure trips, her college tuition (even though there is no evidence that she is still a student), bank overdrafts, church contributions, "special occasions" (such as Valentine's Day or Mother's Day), and others. Many of her other listed expenses would be more appropriately classified as child support expenses and should not be considered when determining whether alimony is due. Among these expenses would be children's tuition and other school expenses, children's medical bills, and the proportion of household expenses attributable to the children's use.
When considering whether a spouse's means are sufficient to support her (or his) needs, the Court must look to the income and property of the spouse requesting alimony before making its determination. Smith v. Smith, supra; White v. White, 356 So.2d 1023 (La.App. 1st Cir. 1977).
Mrs. Moss enjoyed an extensive education. Years before the trial she earned a degree in English and in May of 1978 she earned a Master's degree in Guidance and Counseling. During the school year preceding the trial Mrs. Moss had taught classes at McNeese and at the Episcopal Day School. Nevertheless, she was unemployed at the time of trial, and her status as a member of the regular work force remained in doubt since none of her five job applications had borne any offers of employment. She did have a temporary job lined up with the McNeese State University Placement Office which was to begin June 6, 1979, shortly after trial. But this job was to last only two months and would result in income of only $300.00 per month.
Mrs. Moss had other property in addition to the prospective income. Her one-half interest in community owned stock was valued at $17,175.00, her share of a community savings account amounted to $2,890.24, and *1209 her checking account contained a balance of $2,000.00.[3] Thus, her liquid assets totalled over $22,000.00.
In addition to her liquid assets Mrs. Moss owned a two-bedroom home located in Lake Charles, valued at $32,000.00. The $10,000.00 down payment reflected her equity in the home. Funds for the down payment she received as her share of the sale of the former community home. She also owned a 1975 or 1976 model Chevrolet automobile of unknown value.
A community-owned pension and profit sharing plan with an estimated value of $38,000.00 remained undivided. The trial court correctly excluded this asset in determining whether Mrs. Moss had sufficient means for her support since her interest would not be available to her until Mr. Moss reached the age of 65, twenty-eight years after the trial.[4]
In dispute is whether Mrs. Moss owned 18/30ths of 313 acres of land in Mississippi. The trial judge in his reasons for judgment said:
"The Court can do nothing other than take notes of the evidence in the record, demonstrated by deeds that Mrs. Moss owns 18/30ths, undivided interest, in 313 acres of cotton-farming land in Mississippi. I do not know the value of that land, but I would equate it to the value of rice-farming land in this area, so far as monetary worth is concerned, and I believe that I can take judicial notice that such land presently has a market value of some $1,200.00 per acre, which would indicate that Mrs. Moss actually owns, as record title owner, an interest in that property, with a present market value of approximately $187,000.00...."
Counsel for Mrs. Moss claims the trial court erred (1) in considering the Mississippi property as property belonging to Mrs. Moss, and (2) in taking judicial notice of the relative value of cotton-farming and rice-farming land.
Our review of the record has produced no deed transferring the ownership of the property to Mrs. Moss. In fact, the record shows that the trial court denied admission of the deed into evidence.[5] The testimony of Mrs. Moss indicates she was deeded the land but she claims she has never received any income from the property and was, in fact, unaware of the deed's existence until it was shown to her at her deposition. Her understanding is that the land was deeded to her by her mother, who is still alive, so that Mrs. Moss' inheritance tax liability, created when her mother dies, will not be so onerous. No evidence was presented to rebut her testimony.
Assuming the evidence did establish Mrs. Moss' ownership of the property in Mississippi, the trial court erred by taking judicial notice of the value of that land. Judicial notice may be taken only of facts which may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence, and a court may not take judicial notice of a fact merely within the Judge's individual knowledge. State, Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1st Cir. 1970). The value of neither rice-farming land nor cotton-farming land forms part of the common knowledge, hence the Judge erred in taking judicial notice of the value of such land. In the absence of evidence rebutting Mrs. Moss' *1210 testimony or evidence tending to prove the value of the land in Mississippi, the trial court should not have considered the property at all in determining whether the means Mrs. Moss had at her disposal were sufficient to meet essential expenditures.
Even without considering Mrs. Moss' apparent undivided interest in the Mississippi acreage, we conclude that Mrs. Moss has not overcome the burden of proving she has insufficient means for her support. We find that the means she has at her disposal $22,000.00 worth of liquid assets, a temporary income of $300.00 per month, and other assets that she owns, such as her home and automobile, are adequate to meet her "maintenance" expenses as that term is defined in Smith and Bernhardt, supra. Other of her listed expenses which directly pertain to the support of her two younger sons are properly allocable to the child support payments she has been receiving and will continue to receive from her former husband.
Our finding that Mrs. Moss presently has sufficient means for her support under these circumstances is not without precedent. Other decisions have held that a former wife's claim to permanent alimony will be defeated if she has liquid assets of $20,000.00 or more. Paddison v. Paddison, 255 So.2d 504 (La.App. 4th Cir. 1971); Garrett v. Garrett, 229 So.2d 213 (La.App. 2nd Cir. 1969). The $20,000.00 figure is not sacrosanct. We recognize that the rate of asset depletion will be greater today because $20,000.00 will purchase fewer goods and services than it did when Paddison and Garrett were decided a decade ago. Yet, there is no other legislative or jurisprudential guideline establishing the percentage of asset depletion required before a spouse's means will be held inadequate and alimony will be awarded. In the absence of more convincing proof of need, however, we decline to reverse the District Judge when it was within his great discretion to refuse alimony even without considering the Mississippi property. Should Mrs. Moss need to claim permanent alimony in the future because of changed circumstances, she has the right to do so.[6] La.C.C. Art. 160.

CHILD SUPPORT
The judgment of the District Court awarded permanent custody of the four children to Mrs. Moss. However, the Judge found that only the two youngest sons lived with their mother in Lake Charles. The two older boys lived with their paternal grandmother in Ferriday, Louisiana, and attended private school there.[7] Accordingly, the Judge awarded Mrs. Moss child support in the amount of $250.00 per month for each of the two children living with Mrs. Moss ($500.00 per month), and $200.00 per month whenever the two oldest sons are residing with their mother.[8] Mrs. Moss has asked the Court to increase the child support to $250.00 per month per child.
Defense counsel argues that the Court cannot consider the children to be living anywhere other than with the parent who has obtained custody of the child. Some testimony of Mrs. Moss indicates that she requested that the two older boys return to the new home she had purchased to live with her in Lake Charles. However, when *1211 questioned by the Court, Mrs. Moss did not know where the children would be residing, and at the time of trial they were not residing with her.
It is true that the parent with custody controls the affairs and lifestyles of the children. DeBoisblanc v. deBoisblanc, 337 So.2d 573 (La.App. 4th Cir. 1976). It is equally true, when calculating the amount of child support, that all of the varying facts and circumstances of each individual case must be taken into account in fixing the amount awarded. Fall v. Fontenot, 307 So.2d 779 (La.App. 3rd Cir. 1975). The trial court did not abuse its discretion by considering that the older sons actually lived with their paternal grandmother and not with their mother. It is clear from Mrs. Moss' testimony that she expends nothing to provide for the support of her two older sons except when they visit her, and on those occasions her expenses are not increased substantially. We find no abuse in discretion in the award of $200.00 for child support for the two older boys whenever they are residing with their mother. Mrs. Moss, of course, has the right, in the future, to request an increase in child support in the event that the circumstances have changed. Finley v. Finley, 305 So.2d 654 (La.App. 1st Cir. 1974).
In support of her request for an increase in child support, Mrs. Moss suggests, through counsel, that the Judge "felt that for each child residing with Mrs. Moss, the child support should be fixed at $250.00 per month." No rule of law requires that an equal amount of child support be awarded for each child, especially when some of the children are not residing with the parent awarded custody. We find the trial judge acted within the great discretion accorded him in matters of this kind. The judgment will be affirmed.

DECREE
For the above and foregoing reasons the judgment of the District Court is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.
NOTES
[1] Effective June 29, 1979, Act 72 of 1979 amended Article 160 by making it gender-neutral. Under the amended Article 160 either spouse in need may obtain alimony. In Lovell v. Lovell, 378 So.2d 418 (La. 1979), the Louisiana Supreme Court declared Article 160, as written prior to its amendment by Act 72 of 1979, unconstitutional as violative of the equal protection clause of the state and federal constitutions. This holding was prompted by the decision of the United States Supreme Court in Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), which held unconstitutional an Alabama statute similar to Article 160 before its amendment in 1979. In the course of its decision in Lovell, the Supreme Court overruled Loyacano v. Loyacano, 358 So.2d 304 (La. 1978), and further declared that all judgments awarding alimony prior to the effective date of the amendment (June 29, 1979), were not affected by the decision. Judgment in this case was signed June 8, 1979. Thus, neither Lovell nor Act 72 of 1979 affects the judgment of the District Court.
[2] Her bank statements and cancelled checks had been subpoenaed but Mrs. Moss and her attorney neglected to bring them to trial.
[3] Her one-half interest in the stock and in the savings account were tendered to her during the trial.
[4] Mrs. Moss refused an offer of $15,000.00 for her share of the plan. Counsel for Mr. Moss contends that the offer was very reasonable. We opine that she was under no legal obligation to accept the settlement offer, despite its apparent reasonableness. See Meyer v. Meyer, 357 So.2d 832 (La.App. 4th Cir. 1978), for a similar holding.
[5] We note that he did so because the deed was attached to Mrs. Moss' deposition which was not allowed as evidence because Mrs. Moss was available for cross-examination. The Judge ruled that since she had identified the deed in her deposition, she could do so again during her testimony at trial. Also, the Judge could possibly have excluded the deed from the record because counsel for Mrs. Moss claimed it was inadmissible simply because it was not in proper form.
[6] Simply to make the record complete, we note that Mr. Moss earns in excess of $40,000.00 per year as a petroleum engineer. The fact that he may be able to afford paying alimony is not important in deciding whether alimony should be awarded. The award is based solely on a showing by the wife that she was not at fault and that she does not have sufficient means for her support. The income of the husband is not considered until after the wife has proven she is in need of alimony.
[7] This living arrangement was apparently mutually agreed upon. Mrs. Moss' testimony indicates that the decision to leave the home in Lake Charles to reside with the grandmother in Ferriday lay with the older boys and not with Mr. Moss.
[8] In his reasons for judgment the trial judge made the award of $200.00 per month whenever the two oldest sons visited with their mother. However, the signed judgment provides that the $200.00 per month award becomes effective whenever the two oldest sons are residing with their mother. It is not clear why the wording of the judgment is different from the wording of the reasons for judgment.