407 So.2d 70 (1981)
Laverne Roberts GRAFF
v.
Charles E. GRAFF.
No. 12114.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1981.
Thomas M. Willmott, Metairie, for plaintiff-appellee.
Corey, Reed, Bethay & Kogos, Corwin B. Reed and Edward J. Lassus, Jr., New Orleans, for defendant-appellant.
Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
CHEHARDY, Judge.
Defendant, Charles E. Graff, appeals a district court decision in favor of plaintiff, Laverne Roberts Graff, and against the defendant decreeing that he pay permanent alimony to Mrs. Graff in an amount of $550 per month, payable $126.92 per week, said payments to be maintained as previously set forth by the trial court in this matter.
The judgment also decreed a divorce "a vinculo matrimonii" between the parties in favor of Charles Graff and against Laverne Graff and further noted that Mrs. Graff was found free of fault and Mr. Graff was found to be at fault in those proceedings.
Mrs. Graff has also answered the appeal averring that the award of alimony given to her is proper but asking alternatively that the alimony award be increased.
In giving his reasons for judgment from the bench, the trial court judge stated:
"The Court is called upon to * * * First of all the Court is going to grant a divorce in favor of the husband finding that the parties have lived [apart] and have not reconciled since May 11, 1979. The Court has previously determined fault issue in this matter, finding the husband at fault * * * The Court previously fixed in this matter $550.00 for alimony pendente lite. Accordance with Article 160 and the jurisprudence thereunder, the Court is of the opinion that it must fix permanent alimony to cover shelter, clothing, food, medical, transportation, utilities, telephone and tax liability for the wife. On the other hand the Court must also take into consideration the employment of the wife, or her ability to obtain employment, her age and the wife's medical problems. The Court finds *71 as a matter of fact that the wife is 51 and does have medical problems which she testified to. Considering the items which she has listed in her list, she lists housing at $290.00 which states if she pays it by the 1st, by the 5th of the month that sum is $265.00. I find that $265.00 is the amount for housing. The other items that she listed are $200.00 for food, $100.00 for clothing, $100.00 for transportation which is the gas and the upkeep of the vehicle, she pays $50.00 a month toward the medical bills, $25.00 a month toward drugs and $100.00 for utilities. That gives the wife a total payment each month of $820.00 * * * $840.00 a month. The Court has not taken into consideration miscellaneous, personal grooming and another type of expenses. * * * [T]he wife has expenses of at least $840.00 to those matters that the Court must take into consideration * * * under Article 160. I also find that the wife has the ability to work at least part-time because of her medical problems. She testified that she can work three and a half hours a day which is the equivalent of seventeen and a half hours a week based on a five day work week. And she can earn $3.25 an hour. That comes to $56.87 or a total of $244.56 per month * * I rounded that off at $245.00. Subtracting $840.00 minus $245.00, the Court comes up with the sum of $595.00. The Court has previously fixed the sum of $550.00 as alimony in this matter and I'm going to leave it at that. So the Court is going to fix the permanent alimony at $550.00."
The defendant argues on appeal that the trial court should have taken into consideration the plaintiff's full-time rather than her part-time working capacity as well as the fact that she had acquired $7,000 in cash assets as a result of the sale of her home. He also argues that due to these factors, as well as his financial obligations to his four children from a previous marriage, the amount of alimony awarded was an abuse of discretion and should be reduced to $267.67 per month.
LSA-C.C. art. 160 states:
"When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
"In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
"This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries."
It was stipulated at the trial on the merits that the defendant's gross income is $1,880 per month and by affidavit he listed his total net monthly income, after deductions, as $1,312.48. He also testified he pays rent in the amount of $285 a month and the remainder of his monthly expenses are as follows: automobile, $190; educational expenses for his children, $400; payments for car and Master Charge, $157; and miscellaneous expenses, $135 per month. Other expenses listed on his affidavit were: $300, household supplies and food; clothing, $40; utilities, $60; laundry and cleaning, $24; and personal and grooming necessities, $16. Total monthly expenses shown, therefore, were approximately $1,307.
*72 Plaintiff, on the other hand, listed her only income as $550 per month in alimony previously awarded. She testified that her rent was $265 per month if paid before the fifth of the month. By affidavit she listed her other monthly expenses as $200 for food and household supplies; clothing, $100; transportation, $100; medical and dental expenses, $50; drugs and medicines, $25; utilities, $100; laundry and cleaning, $25; personal and grooming necessities, $25; fixed obligations, $100; and miscellaneous expenses, $105.
The plaintiff testified that although she had training as a secretary and had held a number of jobs in that and other capacities over the years, that she was now seeking only a part-time job due to her inability to stand pressure. She explained her physical problems, which include a cyst in her breast, a hernia and past surgery for tuberculosis also preclude her working on a full-time basis. Also part of the record is a letter from the plaintiff's pastor stating that in the months of February through June prior to the trial she had worked for the church as a secretary at the rate of $3.25 per hour during the hours of 9 a. m. to 12 noon on the days she was needed. He added she was sick quite a bit during that time and that her total pay for the entire period of employment was $897.81.
This court can find no error in the district court's determination that the plaintiff had expenses of $840 a month, nor can we find error, based on the record, that she is able to work at least three and a half hours a day in order to earn a total of approximately $245 per month. This court finds, however, that the plaintiff's inability to work more than three and a half hours a day was not successfully established by her at the trial court level. Although she stated she was under the care of a physician, she did not subpoena him to testify in regard to her physical condition and she admitted she has never even discussed her inability to work with him. Although the plaintiff testified she had surgery for tuberculosis in 1959, she admitted that since that time she worked as a secretary, as manager of an apartment complex and even sold cosmetics. She also stated that in 1973 she had a job paying $500 a month and at the time her husband left her she was earning $160 per week managing an apartment complex.
Mr. Graff testified his expenses include the support of his three minor children of a prior marriage of whom he has legal custody; he added that he receives no assistance in their support from the children's mother. He stated two of the children were at a boarding school and that he, until recently, had been unable to pay the school at all for their educational expenses.
The court is aware that the trial court has great discretion in fixing amounts of alimony, and its award should not be disturbed on appeal in absence of a clear showing of abuse of discretion. Labeuve v. Labeuve, 352 So.2d 749 (La.App. 3d Cir. 1977). This court also notes that much discretion is vested in the trial court judge, particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. Therefore, the factual findings of the trial court are to be accorded very substantial weight on review. Kean v. Kean, 388 So.2d 398 (La.App. 1st Cir. 1980). LSA-C.C. art. 160, however, dictates that in determining the amount of alimony after divorce the court must consider, among other things, the earning capacity of the parties as well as their obligations to support or care for dependent children.
Considering all of the evidence and testimony and for the reasons assigned herein, we amend the district court judgment and it is hereby ordered, adjudged and decreed that the defendant, Charles E. Graff, pay permanent alimony to the plaintiff, Laverne Roberts Graff, in the amount of $300 per month, payable $75 per week, said payments to be maintained as previously set forth by the district court. In all other respects the judgment of the trial court is affirmed, each party to pay his own cost.
AMENDED AND AFFIRMED.