423 So.2d 758 (1982)
Lee K. VORISEK
v.
Peggy Genevieve Weil VORISEK.
No. 13212.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1982.
*760 Bernard Marcus, Patricia Maureen Joyce of Deutsch, Kerrigan & Stiles, New Orleans, for plaintiff-appellant.
Philip R. Riegel, Jr. of Parlongue & Riegel, New Orleans, for defendant-appellee.
Before GARRISON, AUGUSTINE and CIACCIO, JJ.
CIACCIO, Judge.
Peggy Weil Vorisek filed a rule to fix post-divorce alimony. After a trial on the merits, the district court rendered judgment in favor of Mrs. Vorisek, awarding her six hundred dollars ($600.00) per month alimony. The trial court also ordered Lee Vorisek to provide his former wife with an automobile for her use, and the maintenance for the vehicle. Lee Vorisek appeals from this judgment, alleging the excessiveness of the award and the legal impropriety of certain items of expense. We amend the trial court's judgment and affirm.
The sole issue on appeal is whether Mrs. Vorisek is legally entitled to post-divorce alimony in the amount of six hundred dollars ($600.00) per month, plus the use and maintenance of an automobile.
The facts are as follows:
Peggy Genevieve Weil and Lee K. Vorisek were married on June 5, 1956. They have three children who have reached the age of majority and are attending college. The children are given voluntary support payments by their father, Lee Vorisek.
Mr. Vorisek and his former wife are major stockholders in a closely held package manufacturing corporation, known as CON PAC, Inc. Together they own 76% of the stock. Mr. Vorisek is the president of the corporation and earns approximately $36,000[1] per year in gross income from the company which employs eighty people. As a result of his position with the corporation, Mr. Vorisek experienced many non-income financial benefits.[2]
The former Mrs. Vorisek has a two year college education. She is employed by the jointly owned company and has been so employed for slightly over a year. She works only twenty (20) hours a week due to a physical disability. She testified that she suffers from a degenerative spinal condition. As a result of this condition she has undergone extensive surgery and experienced three (3) years of partial paralysis.
*761 She incurred medical bills in excess of $25,000 and is being treated by Dr. Hyman Soboloff and Dr. Richard Levy for her condition. The former Mrs. Vorisek testified that she was under doctor's orders not to work more than twenty (20) hours per week and had tried to exceed this limit, but could not, because she lost the use of her legs. Peggy Weil Vorisek takes home $368.40 wages per month, based upon a gross salary of $435.50 per month.
The former Mrs. Vorisek holds a real estate license; however, since her physical condition prevents her from climbing stairs, she has not engaged in the active real estate practice. She completed only two real estate transactions in the prior five years: the sale of her family home and the purchase of her current residence.
She has no other skills nor training. Although she took two courses in jewelry design, she does not have sufficient training to be employed in this trade.
The couple separated (physically) in November, 1974. A petition for divorce was filed August 8, 1977 on the basis that the couple had lived two years separate and apart. On September 19, 1977 a judgment of divorce was granted in which both parties were found to be free from fault.
On April 30, 1981 the family home was sold. Mrs. Vorisek realized slightly over $35,000 from the sale and a real estate commission of $1,950. She used the monies to purchase a condominium, located at 2712 Whitney Place, valued at $56,900. She currently resides at this location and pays a monthly mortgage note of $225.27.
Mr. Vorisek received $36,650 from the sale of the home. He paid off a bank loan of $13,500. He stated that he had not yet paid his attorney fees and he owed his company $2,400.
In addition to the family home, the couple owns a lot in Ascension Parish, which the defendant valued at $12,000 with a mortgage of $3,000. At the time of the hearing on this matter, Mrs. Vorisek was performing the background work needed in order to sell the lot.
Attempts were made, without success, to negotiate a settlement between them concerning the corporate stock.
On June 8, 1981, testimony was given in conjunction with the wife's rule to fix alimony. Mrs. Vorisek stated that she owned her condominium at 2712 Whitney Place, some 5,600 shares of CON PAC, Inc. stock, her community interest in the lot in Ascension Parish and $6,000 in her checking account. She also earns $435.50 per month, gross income. She itemized her income and expenses for this hearing.[3]
Mr. Vorisek stated that he owns an automobile, one-half interest in the Ascension Parish lot, the proceeds from the sale of his family home, and his interest in the CON PAC, Inc. corporation. He receives a gross monthly income of $3,000 per month, plus various non-income company benefits. He gave a detailed list of income and expenses which were admitted into evidence at the hearing.[4]
The trial court considered the evidence, and awarded the wife $600 per month alimony, reasoning that the "total amount that she could possibly collect under the Code ... would be one-third of his total salary, anyway, of $36,000, which would be $12,000."
The Louisiana Civil Code, Article 160, controls the award of alimony after divorce:
Art. 160. When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the *762 court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
In determining whether the claimant is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries.
(Amended by Acts 1964, No. 48, § 1; Acts 1979, No. 72, § 1, eff. June 29, 1979)
We must determine, therefore, whether the trial court violated the provisions of this Article when it made its award of alimony to the defendant.

Wife's Means and Needs:
The appellant contends that the wife failed to prove that she had insufficient means for her support. He specifically points to the wife's income, earning capacity and non-depleted assets in support of his position.

I. Wife's Means:

The party seeking alimony has the burden of proving necessitous circumstances or insufficient means for their maintenance. Kean v. Kean, 388 So.2d 398 (La. App., 1st Cir., 1980); Moss v. Moss, 379 So.2d 1206 (La.App., 3rd Cir., 1980). "Means" includes capital and income. Loyacano v. Loyacano, 358 So.2d 304 (La., 1978); vacated, other grounds, 440 U.S. 952, 99 S.Ct. 1488, 59 L.Ed.2d 766 (1979); on remand, 375 So.2d 1315 (La., 1979) Guarisco v. Guarisco, 271 So.2d 553 (La.App., 1st Cir., 1973).

(a) Income

The appellant contends that his former wife had an average monthly income of $623.00. This amount is comprised of gross salary of $435.50, plus $25.00 interest income and $1,950 real estate commission. We cannot agree with this reasoning.
Mrs. Vorisek did receive gross earnings of $435.50 per month, however, the interest income and $1,950 real estate commission were not regular and reoccurring income to be computed as a fixed sum into her monthly total.
The interest income was interest earned on a checking account and as the balance decreased, so would the interest income.
The real estate commission was a one time earning from the sale of the family home. Moreover, the wife specifically stated that she was no longer engaged in the real estate practice, because she suffered a disability which prevented her from climbing steps.
These figures were properly not considered part of the wife's regular monthly income. There is, however, no indication that these sums were not taken into consideration as an asset of the wife, when the court arrived at its final decision.

(b) Earning Capacity

The appellant next argues that the trial court failed to properly consider the wife's earning capacity. He contends that the appellee failed to prove her inability to work more than twenty (20) hours a week and her inability to continue in the real estate trade.
Under Civil Code Article 160, the wife's earning capacity is a proper consideration in awarding alimony. Noto v. Noto, 396 So.2d 486 (La.App., 4th Cir., 1981); White v. White, 393 So.2d 240 (La.App., 1st Cir., 1980). Although earning capacity is a consideration for awarding alimony, it is only one consideration, and taken alone, it is not a proper basis for rejecting an award of alimony. Super v. Super, 397 So.2d 1084 (La.App., 4th Cir., 1981), writ den. 399 So.2d 583. A mere refusal to work does not create a "need" for alimony, just as it does not *763 create an inability to pay alimony, C.C. Art. 160, LeBlanc v. LeBlanc, 405 So.2d 1187 (La.App., 1st Cir., 1981).
The appellant relies upon the decision of Graff v. Graff, in establishing that the wife has not met her burden of proving that she is unable to work. 407 So.2d 70 (La.App., 4th Cir., 1981).
The Graff case, supra, is clearly distinguishable on its facts from the instant situation. In the Graff case, this Court noted "although she [wife] stated that she was under the care of a physician, she did not subpoena him to testify in regard to her physical condition and she admitted she has never even discussed her inability to work with him." Graff v. Graff, supra at 72. In the present case, the trial judge stated: "I have listened to her sickness and illness and I do think she has the particular affliction that she is not able to really perform." These findings are clearly supported by the record and no manifest error was committed in this regard.
Mrs. Vorisek testified that she had a degenerative spinal disease, which made her unable to climb stairs, thus she could not engage in her prior occupation as a real estate sales person. She also stated that she was under doctor's orders not to work more than twenty (20) hours per week and that when she tried to do so she experienced loss of the use of her legs.
Accordingly, we find no error in the trial court's finding and consideration of the wife's earning capacity.

(c) Residence

Mr. Vorisek argues that his former wife should not be allowed the luxury of investing in non-income producing property.
A wife will not be required to sell her home and deplete the proceeds of the sale in order to be entitled to alimony. Sonfield v. Deluca, 385 So.2d 232 (La., 1980); Loyacano v. Loyacano, supra; Super v. Super, supra.
In considering this matter, the Supreme Court of Louisiana gave the following guidelines regarding asset depletion:
On the question of what extent of asset depletion, if any, should be required of a spouse before he or she may receive alimony, it is impossible to say what relative weight must be given to any one factor in a particular case. The court should instead apply a rule of reasonableness in light of all the factors named herein and any other circumstance relevant to the litigation. For example, in determining the rate at which a spouse may be required to deplete his or her assets, it may be pertinent to consider the mental and physical health of the parties, their age and life expectancy, the parties' other financial responsibilities, the relative ability, education and work experience of the parties, and the potential effect of any contemplated depletion of assets upon the children of the marriage. The problem is of such a nature as to be insusceptible of solution by any exact formula or monetary index, and the court should proceed with great caution and due regard for the probable long range effects of any depletion contemplated.

Loyacano v. Loyacano, supra at 311.
That is, only when large sums are tied up in extravagant housing will the continued possession of the home be considered sufficient means to defeat alimony. Kean v. Kean, supra at 400.
In the instant case the trial court applied a rule of reasonableness and concluded that the wife was not in a position where she would have to sell her home in order to add to the amount of money she would be able to contribute to her support. The trial judge did not err in this finding.
The amount of money tied up in this house is not large by today's standards. Moreover, considering the wife's physical disability it is apparent that she is not in a position to again earn the money necessary to purchase a residence. Rather than rent a house or apartment and then make demand for increased alimony to offset the increase in rent, she purchased this home which may prove to be a wise investment. She is not subject to rent increases and she *764 has a fairly moderate mortgage note. The arrangement will, thus, work to the plaintiff's benefit. See: Sonfield v. Deluca, supra. The criteria is whether the wife has sufficient means, not whether she has some means for her maintenance. (Emphasis supplied)
Even considering the wife's ownership of CON PAC, Inc., stock, her $6,000 checking account and interest earned thereon, her one-time income from the sale of her home, her residence and a jointly owned lot, which she is attempting to sell, we are not convinced that she has sufficient "means" for her maintenance.

II. Wife's Needs

The appellant argues that certain expenses listed by his wife were erroneously considered, since some items which were listed were provided by the wife's employer and other items were not legally permissible under Civil Code Article 160.
A spouse is entitled to obtain sufficient means for their maintenance. C.C. Art. 160. Loyacano v. Loyacano, supra, citing Smith v. Smith, 217 La. 646, 47 So.2d 32 (La., 1950).
"Maintenance" includes the basic necessities of life, such as food, clothing and shelter. Loyacano v. Loyacano, supra; Volker v. Volker, 398 So.2d 134 (La.App., 3rd Cir., 1981). Included under "maintenance" would be necessary transportation, auto expense, medical and drug expense, utilities, household expense and income tax liability resulting from the payment. Bernhardt v. Bernhardt, 283 So.2d 226 (La., 1963); Tracy v. Tracy, 388 So.2d 66 (La.App., 1st Cir., 1980).
"Maintenance" does not include newspapers, gifts, children's allowance and dog care (Kean v. Kean, supra); nor does it include maid service (Tracy v. Tracy, supra; Meyers v. Meyers, 344 So.2d 451 (La.App., 2nd Cir., 1977)); recreation, pleasure trips and vacations (Tracy v. Tracy, supra; Moss v. Moss, 379 So.2d 1206 (La.App., 3rd Cir., 1980)); church contributions or tithes (Moss v. Moss, supra; Meyers v. Meyers, supra) nor does it include life insurance (Meyers v. Meyers, supra).
In this case, the newspaper, temple dues, life insurance and the maid would properly be excluded as items of expense for the wife.
Furthermore, transportation provided by her employer would be excluded from consideration.
It is unclear whether the trial court considered all or any of these expenses in arriving at its conclusion. Even assuming for the sake of argument that all of these items are to be disregarded, there are other expenses for maintenance for which the defendant does not have sufficient income, thus justifying the alimony award. The trial judge did not err in this regard.
Appellant also argues that the appellee's figures were not substantiated by receipts. It is worthy of note that none of the appellant's expenses were so substantiated, and were this the sole test for acceptance, he would have none of his expenses considered. The acceptance of such expenses is an issue of credibility. The trial judge is in the best position to evaluate the witnesses and their testimony. In this case we find no abuse of that discretion.

Husband's Means & Needs

Husband's Means
The appellant contends that the trial court erred when it considered the husband's gross earnings and the wife's net earnings in computing alimony.
The gross pay is the proper figure to be considered for purposes of alimony. Roberts v. Roberts, 145 So.2d 669 (La. App., 4th Cir., 1962). A husband's non-income benefits may also be considered in establishing his means. Vanier v. Vanier, 344 So.2d 1077 (La.App., 3rd Cir., 1977).
Apparently the trial court erroneously used the wife's net salary in computing alimony. However, even considering the wife's gross salary of $435.50 per month as against her husband's $3,000 per month *765 gross salary, plus his non-income company benefits, his salary less expenses greatly surpasses his wife's salary less expenses.

Husband's Needs
Appellant argues that the trial court erred in failing to take into consideration the support payment he voluntarily made to his major children.
A major child may petition for support, if he is in necessitous circumstances. C.C. Art. 229, Fisher v. Fisher, 320 So.2d 326 (La.App., 3rd Cir., 1975). A major child, who is in school, but capable of working, is not by the mere fact of his schooling, in need of support. Phillips v. Phillips, 339 So.2d 1299 (La.App., 1st Cir., 1976), Dubroc v. Dubroc, 284 So.2d 869 (La.App., 4th Cir., 1973). Minors are not required to prove their need, as are majors, in order to secure support. C.C. Arts. 227, 230.
In this case the three children are majors and are in college. They may properly petition the court and prove their need for support. The father's responsibility is best stated in Phillips v. Phillips, supra at 1301:
While we might be inclined to think a father worthy of the name will always generously support and encourage his child's reasonable educational ambitions, the law wisely leaves his generosity as a matter between him and his own conscience. The law declines to force a parent to contribute to his adult child's education or to give support to his adult child who is capable of self-support.
Accordingly, the trial court did not err in refusing to consider the husband's voluntary payments to his major children as being expenses for purposes of determining alimony.
Finally, the husband argues that the trial court erred in failing to consider the financial set backs of the CON PAC company, in determining the alimony award.
To the extent that the company's problems impacted upon Mr. Vorisek's salary, they were considered. These set backs could not be otherwise considered, as the corporation is an entity separate and apart from its officers and stockholders.

Conclusion
The trial court judge has great discretion in the area of domestic relations. See: Kean v. Kean, supra. He has much discretion to allow and fix the amount of alimony. Loyacano v. Loyacano, supra.
A review of the record does not convince us that the trial judge committed manifest error when he awarded the defendant alimony after divorce in the amount of $600 per month. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1979).
We do, however, amend the judgment insofar as it required the plaintiff to furnish his former wife with a vehicle and maintenance. The husband is thus relieved of this personal obligation during such time as this item of expense is being provided by the defendant's employer, CON PAC, Inc.
For the reasons assigned, the judgment is amended to provide that the plaintiff shall be required to provide the defendant with a vehicle and maintenance only at such times as these items are not provided by her employer, CON PAC, Inc. In all other respects the judgment is affirmed. The costs of this appeal are assessed against the appellant.
AMENDED AND AFFIRMED.
NOTES
[1] Mr. Vorisek testified that in 1979 his earned gross income was $46,685. He stated that he was forced to take a ten percent (10%) cut in salary in fiscal year 1981, because the company had experienced a quarter of a million dollar loss the year before.
[2] The company pays rent on one apartment which the plaintiff occupies, it provides him with a car in New Orleans, pays for his business related travel, a membership at the Monroe Racket Club, a table at the symphony, tickets to the Saints' games, his business telephone calls, business meals, lodging, gifts and provides various insurance coverage.
[3] See attached addendum for an itemization of income and expenses.
[4] See attached addendum for an itemization of income and expenses.