626 So.2d 1233 (1993)
Pamela Jean Angel POLK
v.
Xavier James POLK.
No. 92-CA-1891.
Court of Appeal of Louisiana, Fourth Circuit.
November 18, 1993.
Rehearing Denied December 9, 1993.
*1235 Joyce Watts, New Orleans, for plaintiff.
Kathleen M. Bilbe, New Orleans, for defendant.
Before BYRNES, ARMSTRONG, PLOTKIN, JONES and WALTZER, JJ.
BYRNES, Judge.
Defendant Dr. Xavier James Polk (hereinafter "defendant") appeals from a judgment in favor of his former wife, Pamela Jean Angel Polk (hereinafter "plaintiff"), modifying an alimony decree. The issues for review are whether the trial court erred in: (1) finding that plaintiff met her burden of showing a change in circumstances; (2) finding that plaintiff did not enter into open concubinage; and (3) denying defendant's request for a continuance.
Plaintiff and defendant were married January 9, 1973 in Indiana, and were divorced in Orleans Parish March 10, 1982. Two children were born of their marriage. The 1982 judgment of divorce ordered defendant to pay alimony of $50 per month and child support of $100 per month.
On August 1, 1991, plaintiff filed a rule for past due alimony and for an increase in alimony. In her rule, plaintiff alleged that she could no longer maintain full-time employment due to injuries sustained in her 1989 accident, and that defendant's income had increased substantially during the ten years since their divorce. On December 4, 1991, defendant countered with a rule to terminate alimony.
A hearing was held March 11, 1992 on the issue of child support. In a judgment rendered March 18, 1992, defendant's total past due child support obligation was determined to be $776.14 per month for the period August 1991 through March 1992; defendant was ordered to pay $200 per month toward these arrears. Defendant's monthly child support obligation was increased to $628.14, beginning April 1992. Defendant has not challenged the March 18, 1992 judgment of child support on appeal.
Trial on the issue of alimony was held April 21, 1992. The parties filed income expense statements which listed plaintiff's income as $850 and defendant's income as $4177. At the outset of trial, defense counsel asked for a writ of attachment for plaintiff's employer, Donald O. Pinkston (Pinkston), which was denied. The trial court also refused to hold the case open for Dr. John McLaughlin, a subpoenaed witness who would be unavailable to testify until later that afternoon. As a result, plaintiff was the only witness called to testify.
Plaintiff testified that she resided with her three children, two of whom were children of defendant. Her third child was the son of a third party, Cyril Horton (Horton). Although plaintiff admitted that she had filed a paternity suit against Horton, she stated that Horton had not spent nights in her home nor lived with her after their child was born, and that she and Horton had never held themselves out as husband and wife.
Plaintiff discussed a 1989 accident in which she was injured while a passenger on a city bus. As a result of her accident, plaintiff alleged that she suffered from problems with her back, shoulders, neck, and mouth. Surgery had been recommended to treat her back and mouth conditions. Plaintiff's medical bills for treatment of her accident related injuries totaled close to $100,000, but she was seeking recovery of these expenses through a pending lawsuit.
Plaintiff testified that at the time of her accident she had been a secretary with a hotel, a job she had held for five or six years. Since May of 1991, plaintiff had been employed as a part-time secretary in a law office, where she made $5 per hour working 10 to 20 hours per week. She stated that it was difficult for her to find full-time employment because she underwent therapy three times a week, saw various doctors on a monthly basis, suffered headaches, and took *1236 medication which made her drowsy. When asked on cross-examination why she could not do the type of work she had done in the past, plaintiff reiterated her earlier testimony, stating:
Well, for one thing it's difficult for me to sit for a long period of time. As I told you I have headaches and I'm taking medication that doesn't allow me to work full time, it puts me to sleep. And also I have doctors' appointments and therapy appointments throughout the day and the week.
Plaintiff testified that she received $150 per month in child support from Horton, which went directly to the state. Plaintiff and her children were on medical cards through AFDC, and she received $300 per month in food stamps. Plaintiff testified that in the ten years since her divorce, she had received only one payment of alimony from defendant, in the amount of $50.
At the conclusion of trial, defendant proffered the medical report of Dr. John E. McLachlan, who examined plaintiff on December 18, 1991 at the request of defendant.
Ruling from the bench, the trial court ordered defendant to pay $2,350 in past due alimony, declined to terminate alimony, and increased alimony to $750 per month. At the request of counsel for defendant, the trial court provided the following oral reasons for judgment:
The reason being the testimony indicates that [plaintiff] earns $700 a month. [Defendant] earnsat least what I've been presented with, $4,177 a month. He also pays child support in the amount of $600 some odd according to the judgment of March, I believe, of '92. Taking that into consideration, the Court has arrived at alimony in the amount of $750.
The trial court's judgment was reduced to writing on April 23, 1992. Defendant brought this appeal, arguing that the trial court erred in (1) finding that plaintiff met her burden of showing a change in circumstances; (2) finding that plaintiff did not enter into open concubinage; and (3) declining to grant a continuance to secure the testimony of plaintiff's employer, Pinkston.

Change in circumstances
La.R.S. 9:311(A) provides:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.[1]
In her rule to increase alimony, plaintiff alleged that defendant's income had increased substantially during the ten years since their divorce, and that she could no longer maintain full-time employment due to injuries sustained in her 1989 accident. Defendant argues that plaintiff failed to meet her burden of showing that she is unable to work. We disagree.
Plaintiff never asserted that she was unable to work for medical reasons. Her consistent and uncontradicted testimony was that it would be difficult for her to find or maintain full-time employment, partly because of physical problems and partly because her days were interrupted by frequent medical care. There is no question that plaintiff was in fact working at the time of trial. While plaintiff could have strengthened her showing by supplementing her testimony with medical documentation or expert testimony, this flaw is not fatal to her showing. Under the circumstances presented by this case, we conclude that plaintiff's testimony was sufficient, in and of itself, to meet her burden of showing a change in her ability to work.
In Kaye v. Kaye, 558 So.2d 1352 (La. App. 4th Cir.1990), we held that once an obligor spouse proves a change in circumstances, he is presumed to be entitled to a *1237 reduction in his child support obligations. Likewise, once an obligee spouse proves a change in circumstances, he is presumed to be entitled to an increase in alimony. The burden then shifts to the party opposing the increase to disprove the change in circumstances alleged by the obligee, or otherwise overcome the presumption that the obligee is entitled to an increase by proving that the change was caused by the obligor's own voluntary actions or by proving other facts mitigating against the reduction. See Kaye, supra, 558 So.2d at 1354.
Defendant called no witnesses at the trial on this matter, and cross-examination of plaintiff divulged nothing which would tend to cast doubt on the veracity of her testimony. We have reviewed defendant's exhibits, including the proffered medical report of Dr. McLachlan, and conclude that they are insufficient to overcome plaintiff's showing as to a change in her ability to hold full-time employment. In addition, we note that defendant has not questioned plaintiff's showing as to an increase in his income. The record contains an income expense statement, prepared by defendant, which lists his present income as $4,177; at the time of the parties' divorce, defendant listed his income as $706.64 per month.[2] We conclude that plaintiff has met her burden of showing a change in circumstances, both as to her ability to work and as to defendant's salary. Accordingly, she was entitled to an increase in alimony.
In connection with this issue, defendant asserts that the trial court's increase in alimony, from $50 to $750 per month, was too high. The trial court is vested with much discretion in fixing alimony, and should not be reversed absent an abuse of that discretion. Drummond v. Drummond, 462 So.2d 682, 683 (La.App. 4th Cir.1984). Based on plaintiff's showing as to a change in defendant's income and in her own ability to work full-time, we conclude that the trial court acted within its discretion in increasing alimony to $750 per month. See eg. Jordan v. Jordan, 432 So.2d 314 (La.App. 5th Cir.1983), writ den. 438 So.2d 1111 (La.1983) (increase in alimony from $450 to $975 per month warranted where former wife had serious health problems and former husband had a substantial increase in earnings).

Open Concubinage:
In addition, defendant challenges the trial court's denial of his motion to terminate alimony, arguing that La.C.C. Art. 112(A)(4) bars an award of permanent alimony to a spouse who has an illegitimate child. We disagree. La.C.C. Art. 112(A)(4) provides: "Permanent periodic alimony * * * terminates if the spouse to whom it has been awarded remarries or enters into open concubinage." There is nothing in La.C.C. Art. 112(A)(4), the jurisprudence interpreting this article, or anywhere else in Louisiana law which stands for the proposition that conception of an illegitimate child is, in and of itself, grounds for a finding of open concubinage.
The jurisprudence defines "concubinage" as a relationship of sexual content in which man and woman live together as husband and wife in a state of affairs approximating marriage. See Gray v. Gray, 451 So.2d 579, 583 (La.App. 2nd Cir.1984), writ den. 457 So.2d 13 (La.1984). Concubinage is "open" when the relationship is not disguised, concealed, or made secret by the parties. Id. Mere proof of sexual acts is not sufficient for a finding of open concubinage. Id., citing Succession of Jahraus, 114 La. 456, 38 So. 417 (La.1905).
In the instant case, the only proof of the nature of plaintiff's relationship with Horton is her admission that she conceived a child with Horton, together with her uncontradicted testimony that Horton did not live with her. Although defendant asserts in brief that plaintiff "never exactly described the nature of her relationship with Mr. Horton," and "was extremely coy about the exact nature of her relationship with her paramour," we note that she was never asked to explain the "exact nature" of her relationship. The following exchange between plaintiff and *1238 counsel for defendant constitutes defendant's sole showing on the issue of concubinage:
Q. Now, Mrs. Polk, I think that you have your youngest child who is six years old now?
A. Yes.
Q. When was that childwould that child have been born, in what?
A. December of '85.
Q. And that child was as a result of the union between you andI'm sorry, what is the man's name?
A. Cyril Horton.
Q. Cyril Horton?
A. That's correct.
Q. And you and Mr. Horton were not married at that time?
A. No, we were not.
Q. Have you gotten married at any later date?
A. No. We've never been married.
There is nothing in this exchange which could be construed as showing that plaintiff entered into open concubinage with Horton. The trial court was correct in concluding that plaintiff's mere admission of sexual relations was insufficient, standing alone, for a finding of open concubinage.

Denial of Continuance:
Finally, defendant asserts that the trial court erred in denying a continuance to allow defendant to cross-examine plaintiff's employer, Donald O. Pinkston (Pinkston). We disagree.
La.C.Civ.P. Art. 1602 provides: "A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows * * * that a material witness has absented himself without the contrivance of the party applying for the continuance." Based on our review of the record, defendant failed to show that Pinkston absented himself without the contrivance of defendant.
Pinkston's subpoena was filed in the trial court on April 6, 1992, and was served on Pinkston the next day, only two weeks prior to trial.[3] On April 13, only eight days prior to trial, defendant filed a written motion to continue, on grounds that Pinkston would be unable to appear at trial. This motion was denied the same day. At the outset of the trial on this matter, counsel for defendant requested a writ of attachment for Pinkston.[4] The trial court then informed counsel for defendant that Pinkston had called the court that morning, and told the court that defense counsel had told him he would not need to appear. The following exchange then took place:
Counsel for defendant: That's not correct judge. He called me. I told him that based upon his representation that he had two criminal trials scheduled, that I told him I would file a motion to continue * * * I presumed as he presumed, that it was going to be continued.
The Court: You're saying you didn't tell him he had to be here?
Counsel for defendant: No, sir. I told him I would file the motion to continue, which was done.
Whereupon the trial court concluded: "I'm not going to issue an attachment at this point. I'll hear the testimony and then I'll entertain that later." Near the conclusion of trial, the trial court stated: "With respect to Donald Pinkston, the Court will not issue an attachment based upon what you have told me and what he has told me and the fact you had sufficient time to depose him."
All of the facts pertaining to this issue indicate that defendant was remiss in securing the appearance of Pinkston. Pinkston was subpoenaed only two weeks prior to trial, and at some time thereafter was informed that he would not be required to appear, based solely on defense counsel's assumption that a continuance would be granted. *1239 When defendant's motion for continuance was denied eight days prior to trial, defendant failed to depose Pinkston. Under these circumstances, defendant has failed to show that Pinkston absented himself without the contrivance of defendant. The trial court acted within its discretion in refusing to grant a continuance.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
WALTZER, J., concurs with reasons.
JONES, J., concurs in part; dissents in part.
PLOTKIN, J., dissents in part.
WALTZER, Judge, concurring with reasons.
The trial judge had ample reasons to award Mrs. Polk $750.00 per month in permanent periodic alimony. The law sets forth guidelines in this area as applied to the facts surrounding Mrs. Polk's current financial responsibilities and ongoing physical disabilities.
The controlling law for increasing or decreasing alimony previously awarded is La. R.S. 9:311 which states:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award (emphasis supplied).
This case revolves around the significant changes in circumstances experienced by both parties. Mr. Polk's present monthly income, as indicated in the record, is $4,177.00. However, even with Mr. Polk's increase in his monthly income as a California psychologist he was neither persuaded to pay the 1982 court ordered $50.00 per month alimony to Mrs. Polk, nor the child support ordered to be paid at the same time. Thus, until now, Mrs. Polk had to rely on her own resources for her children and her own well-being. The record indicates that Mrs. Polk can no longer work full-time due to back, neck, and mouth injuries she sustained as a passenger on a RTA bus in an accident in 1989. Now Mrs. Polk can only work twenty (20) hours per week maximum because of the recurring pain she suffers from her injuries. Mrs. Polk is limited in the amount of medication she may take for her persistent pain because she also suffers from heart problems "mitral valve prolapse". Additionally, Mrs. Polk cannot undergo either of the two recommended surgeries to correct her back and jaw problems nor can she pay the $100,000.00 medical bills she has incurred to date because she cannot find health insurance. Mrs. Polk's monthly income is only $850.00 ($628.14 of which is attributable to child support she is to receive now from Mr. Polk since the recent March 11, 1992 court order). This court must consider the circumstances which constitute a legitimate basis for increase in alimony.
Where the current needs of the support obligee are determined from competent evidence, and it is shown that the support obligor has the ability to meet those needs because of increased earnings, this showing may be legally sufficient to warrant an increase in the support award. Jordan v. Jordan, 432 So.2d 314 (La.App. 5th Cir., 1983)
While Mrs. Polk's expenses are considerable and the prospect of her advancement to a better job or a full-time position is slim, she lacks the necessary resources to correct her physical impairments. Mrs. Polk has no car. Her children must use bus passes to get home from school where they participate in extra curricular activities at a cost of $250.00 per month. Furthermore, Mrs. Polk's youngest child was sexually abused in public school where he previously attended, necessitating that he attend private school where tuition costs $100.00 per month. Although this child is not the son of Mr. Polk, the expenses are still incurred by Mrs. Polk and are, therefore, relevant to determine her "necessitous circumstances". The trial judge was correct in concluding that this expense of Mrs. Polk was "reasonable and necessary" and would ultimately affect the lives of Mr. Polk's two children who live with Mrs. Polk.
The record further indicates that the trial court carefully reviewed all the evidence *1240 available. At the time of the trial, the defendant chose not to appear. There was no evidence adduced to show the needs of Mr. Polk, only an expense sheet was filed. Mrs. Polk bore her burden of proof to show that an increase in alimony was warranted. Consistent and uncontradicted testimony established that her circumstances had significantly changed for the worse and that her former spouse's financial resources had significantly increased since the original court order of permanent periodic alimony in 1982. The trial court has great discretion in fixing amounts of alimony and such awards should not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. Drummond v. Drummond, 462 So.2d 682 (La.App. 4th Cir., 1984). The trial court did not abuse its discretion by increasing Mrs. Polk's alimony. Therefore, I respectfully concur.
JONES, Judge, concurring in part; dissenting in part.
I respectfully dissent from that part of the majority's opinion affirming the trial court's increase of alimony to $750.00 in this matter. I would affirm the judgment granting an increase in alimony, however the record only supports an increase of $300.00; the amount prayed for in plaintiff's Rule to Increase.
PLOTKIN, Judge, dissenting in part.
The primary issue in this appeal is whether the trial court properly increased Mr. Polk's permanent alimony obligation from $50 per month, determined in 1982, to $750 in 1991. The majority affirms that decision; I dissent.
Although the evidence supports the trial court's finding that Mrs. Polk's circumstances have changed since 1982, the appropriate amount of the increase would be from $50 to $300 per month, as requested in Mrs. Polk's pleading. The majority improperly increased the award to $750 based on factors that are either irrelevant or not supported by the record. The fact that Mrs. Polk now has an illegitimate third child should not have been considered in setting the alimony award at $750. Neither should the fact that she was involved in 1989 in a bus accident, as a result of which she incurred substantial medical expenses, and is actively seeking reparation for these expenses and damages in her personal injury suit, nor the fact that she currently does not own an automobile be considered.
Additionally, Mrs. Polk's current income is suspect. Mr. Polk's attorney timely subpoenaed and served her employer Mr. Pinkston. Eight days prior to trial the defendant filed a motion to continue the hearing because Pinkston would be unable to appear at trial. This motion was summarily denied the same day. At trial, the court refused to grant a continuance, and denied the defendant's request to issue an attachment for Pinkston, who called the court that morning. The record does not indicate why Pinkston was unavailable.
In alimony hearings, a defendant spouse is entitled to examine the employer of the party seeking alimony or an alimony increase. The issue of the sufficiency or insufficiency of the spouse's means of support is the essential element of the case. L.C.C. art. 112(A)(1). The party seeking alimony has the burden of proving necessitous circumstances or insufficient means for his maintenance. Kean v. Kean, 388 So.2d 398 (La.App. 1st Cir.1980). In determining whether a former wife is entitled to post-divorce alimony, the court should consider whether the wife has sufficient means for her support, not whether she has some means for her maintenance. Vorisek v. Vorisek, 423 So.2d 758 (La.App. 4th Cir.1982. Pinkston was timely and properly subpoenaed. His failure to appear was not caused by the contrivance of Mr. Polk. On the contrary, Mr. Polk's attorney exercised every legal right available to have him appear and testify.
The court heard the self-serving testimony of Mrs. Polk that she earns $50-$100 per week at a law firm. Mr. Polk was entitled to examine his former wife's earning capacity and actual earnings. Alford v. Alford, 610 So.2d 923 (La.App. 1st Cir.1992). To deny him this opportunity, for the reasons stated by the majority, was harmful error. I would remand for the taking of this witness's testimony.
NOTES
[1] In defendant's assignment of error # 1, defendant asserts that plaintiff was not entitled to permanent periodic alimony under La.C.C. Art. 112. We find this article inapplicable here, where an award of permanent periodic alimony was rendered under La.C.C. Art. 112, and plaintiff seeks a modification of that award under La.R.S. 9:311. Where applicable, defendant's arguments in assignment of error # 1 have been combined into our discussion under La.R.S. 9:311.
[2] There is nothing in the record which indicates defendant's expenses, either now or at the time of divorce.
[3] It is unclear from the record exactly when plaintiff's rule for alimony was set for hearing. A motion to reset the hearing, filed by defendant on March 19, 1992, indicates that the matter had been set for hearing by at least this date, over two weeks prior to the date Pinkston was subpoenaed.
[4] See La.C.Civ.P. Art. 1357, which provides in part: "The court may also order a recalcitrant witness to be attached and brought to court forthwith or on a designated day."